**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

EscapeX IP LLC

          Plaintiff,

          v.

Block Inc.

          Defendant.

Civil Action No. 1:22-cv-03575-JMF

**ORAL ARGUMENT REQUESTED**

---

**DEFENDANT BLOCK, INC.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO CLAIM**
**PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

     A.    Procedural history .............................................................................................. 2

     B.    Statement of facts.............................................................................................. 2

LEGAL STANDARD................................................................................................................ 7

ARGUMENT ............................................................................................................................ 9

I.     Claim 1 is ineligible for patenting under § 101. ................................................. 9

     A.    *Alice* Step One: Claim 1 is directed to an abstract idea—updating provider-selected media content on a user device. ................................. 9

     B.    *Alice* Step Two: Claim 1 does not contain an inventive concept because it simply implements the abstract idea using generic computer components and techniques................................................................................................ 14

II.    The remaining claims are ineligible for patenting for the same reasons as claim 1........................................................................................................................ 16

CONCLUSION....................................................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)................................................................ *passim*

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
  573 U.S. 208 (2014)............................................................................... *passim*

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................7

*AuthWallet, LLC v. Block, Inc.*,
  2022 WL 1321387 (S.D.N.Y. May 3, 2022) ......................................................2

*AuthWallet, LLC v. Block, Inc.*,
  No. 1:21-cv-05463 (S.D.N.Y.)..........................................................................2

*B# on Demand LLC v. Spotify Tech. S.A.*,
  484 F. Supp. 3d 188 (D. Del. 2020)................................................................18

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)..........................................................................8

*British Telecomms. PLC v. IAC/InterActiveCorp*,
  813 F. App'x 584 (Fed. Cir. 2020) ..................................................................11

*buySAFE, Inc. v. Google, Inc.*,
  765 F.3d 1350 (Fed. Cir. 2014)........................................................................13

*ClearDoc, Inc. v. RiversideFM, Inc.*,
  2022 WL 606698 (D. Del. Feb. 22, 2022) .......................................................11

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021)........................................................................15

*CyberSource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011)........................................................................16

*Data Scape Ltd. v. Western Digital Corp.*,
  816 F. App'x 461 (Fed. Cir. 2020) ......................................................11, 13, 15

*In re Elbaum*,
  2021 WL 3923280 (Fed. Cir. Sept. 2, 2021) ...................................................14

ii

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC,*
    958 F.3d 1178 (Fed. Cir. 2020)...........................................................................9

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016)..........................................................................16

*Ericsson Inc. v. TCL Comm. Tech. Holdings Ltd.,*
    955 F.3d 1317 (Fed. Cir. 2020)..........................................................................13

*EscapeX IP LLC v. Apple, Inc.,*
    No. 6:22-cv-00427-ADA (W.D. Tex.).................................................................2

*EscapeX IP LLC v. Digital Trends,*
    No. 1:22-cv-03512-CM (S.D.N.Y.)......................................................................2

*EscapeX IP LLC v. Google LLC,*
    No. 6:22-cv-00428-ADA (W.D. Tex.).................................................................2

*EscapeX IP LLC v. Rockbot Inc.,*
    No. 2:22-cv-00130-RWS-RSP (E.D. Tex.) .........................................................2

*EscapeX IP LLC v. Sirius XM International Inc. et al.,*
    No. 6:22-cv-00430-ADA (W.D. Tex.).................................................................2

*EscapeX IP LLC v. Spotify USA Inc.,*
    No. 3:22-cv-00963-X (N.D. Tex.) .......................................................................2

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
    839 F.3d 1089 (Fed. Cir. 2016).................................................................8, 12, 17

*In re: General Motors LLC Ignition Switch Litig.,*
    2016 WL 3920353 (S.D.N.Y. July 15, 2016) ......................................................7

*Google LLC v. Sonos, Inc.,*
    498 F. Supp. 3d 1138 (N.D. Cal. 2020) .............................................................11

*Hawk Tech. Sys., LLC v. Castle Retail, LLC,*
    2021 WL 5832793 (W.D. Tenn. Sept. 15, 2021)..................................................5

*Joao Bock Transaction Sys., LLC v. Fidelity Nat'l Info. Servs., Inc.,*
    122 F. Supp. 3d 1322 (M.D. Fla. 2015).............................................................13

*Kroy IP Holdings, LLC v. Safeway, Inc.,*
    107 F. Supp. 3d 677 (E.D. Tex. 2015)..........................................................15, 17

*OIP Techs., Inc. v. Amazon.com, Inc.,*
    788 F.3d 1359 (Fed. Cir. 2015)..........................................................................13

*Quantum Stream Inc. v. Charter Commc'ns, Inc.*,
309 F. Supp. 3d 171 (S.D.N.Y. 2018) ..................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018) ...........................................................................8

*Search & Social Media Partners v. Facebook, Inc.*,
2019 WL 581616 (D. Del. Feb. 13, 2019) ...........................................................11

*Simio, LLC v. FlexSim Software Prods., Inc.*,
983 F.3d 1353 (Fed. Cir. 2020) ...........................................................................9

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
873 F.3d 1364 (Fed. Cir. 2017) ....................................................................14, 16

*Smartflash LLC v. Apple Inc.*,
680 F. App'x 977 (Fed. Cir. 2017) ....................................................................14

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1378 (Fed. Cir. 2019) ...........................................................................13

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014) ...........................................................................8

*Universal Secure Registry LLC v. Apple Inc.*,
10 F.4th 1342 (Fed. Cir. 2021) .....................................................................8, 14

**Statutes**

35 U.S.C. § 101 ..................................................................................... *passim*

**Other Authorities**

Dynamic IP Deals LLC, https://dynaipdeals.com/ (last visited July 12, 2022) .............................2

Federal Rule of Civil Procedure 12(b)(6) ..................................................................2, 7, 8

Unified Patents, *$3,000 for Dynamic IP Deals entity Escapex IP prior art* (May
25, 2022), https://www.unifiedpatents.com/insights/2022/5/25/3000-for-
dynamic-ip-deals-entity-escapex-ip-prior-art (last visited July 12, 2022)...............................2

**INTRODUCTION**

The '113 patent is ineligible for patenting under well-settled Supreme Court and Federal Circuit law. In *Alice Corp. Pty. Ltd. v. CLS Bank International*, 573 U.S. 208 (2014), the Supreme Court held that claims that merely involve "generic computer implementation" of abstract ideas are ineligible for patent protection under 35 U.S.C. § 101. *Alice*, 537 U.S. at 219, 223. And the Federal Circuit's precedential post-*Alice* decision in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016), is both instructive for and dispositive of the '113 patent. In *Affinity Labs*, the Federal Circuit held unpatentable claims "to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Id.* at 1268. Those claims, the Federal Circuit reasoned, were directed to "the concept of delivering user-selected media content to portable devices," which is "an abstract idea, as that term is used in the section 101 context." *Id.* at 1269. And the claims lacked an inventive concept because they were "written in largely functional terms" and relied simply on "conventional computer and network technology." *Id.* at 1271.

Applying *Affinity Labs* to this case leads inescapably to the conclusion that the '113 patent claims are unpatentable. The patent claims systems and methods for updating media content—specifically, lists of songs—on a user's device. If the concept of "delivering user-selected media content to portable devices" is an ineligible abstract idea, so too is the concept of updating media content on a user device. Moreover, like the claims at issue in *Affinity Labs*, the claims at issue here do not recite inventive computer technology. The '113 patent claims merely describe their purported invention in almost entirely functional terms. Indeed, the only structures recited in the '113 patent claims are indisputably conventional and generic computer components.

1

Block, therefore, respectfully requests that the Court grant its motion and dismiss EscapeX's complaint with prejudice.

## BACKGROUND

### A.    Procedural history

Plaintiff EscapeX IP LLC is the owner of U.S. Patent No. 9,009,113, the only patent asserted in this case. EscapeX is a non-practicing entity and subsidiary of Dynamic IP Deals, a company that purports to specialize in "intellectual property monetization."[1] This lawsuit is one of seven EscapeX has recently filed alleging infringement of the '113 patent.[2]

EscapeX filed its complaint on May 3, 2022, Dkt. 1, and filed an amended complaint on May 9, 2022, Dkt. 9. The Court granted Block an extension of time to August 5, 2022 in which to respond to the complaint. Dkt. 17. Block now files this motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

### B.    Statement of facts

The '113 patent discloses and claims systems and methods for using an "artist-specific application" to provide users with "artist-specified dynamic albums" that may be periodically

---

[1] *See* Unified Patents, *$3,000 for Dynamic IP Deals entity Escapex IP prior art* (May 25, 2022), https://www.unifiedpatents.com/insights/2022/5/25/3000-for-dynamic-ip-deals-entity-escapex-ip-prior-art (last visited July 12, 2022); Dynamic IP Deals LLC, https://dynaipdeals.com/ (last visited July 12, 2022).

Another subsidiary of Dynamic IP Deals, AuthWallet LLC, previously sued Block for infringement of a different patent. *See AuthWallet, LLC v. Block, Inc.*, No. 1:21-cv-05463 (S.D.N.Y.). Judge Liman granted Block's motion to dismiss for failure to claim patentable subject matter on May 3, 2022. *See AuthWallet, LLC v. Block, Inc.*, 2022 WL 1321387, at *1 (S.D.N.Y. May 3, 2022). EscapeX filed the present lawsuit the same day.

[2] *See EscapeX IP LLC v. Digital Trends*, No. 1:22-cv-03512-CM (S.D.N.Y.); *EscapeX IP LLC v. Rockbot Inc.*, No. 2:22-cv-00130-RWS-RSP (E.D. Tex.); *EscapeX IP LLC v. Spotify USA Inc.*, No. 3:22-cv-00963-X (N.D. Tex.); *EscapeX IP LLC v. Apple, Inc.*, No. 6:22-cv-00427-ADA (W.D. Tex.); *EscapeX IP LLC v. Google LLC*, No. 6:22-cv-00428-ADA (W.D. Tex.); *EscapeX IP LLC v. Sirius XM International Inc. et al.*, No. 6:22-cv-00430-ADA (W.D. Tex.).

updated on the user's device. '113 patent Abstract (Ex. A). According to the specification, conventional "music downloads and streaming services" have certain drawbacks. For example, they do not allow users to consume artist content that is posted on social media; they require the artist to relinquish "control over music consumed by the user"; and they provide the artist with "little to no motivation to promote the streaming service (because they have little to no financial incentive to do so)." *Id.* 1:30–2:15. The patent purports to provide a solution to these problems by describing "systems and methods of generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user device at which a dynamic album has been stored." *Id.* 2:19–24.

The specification describes an "artist specific application," or "ASA," that "includes music and other content related to the artist." *Id.* 4:56–58. Users can download the ASA to their user device and then "listen to the artist's music and consume other content related to the artist through the ASA." *Id.* 4:58–64. The music and other content are available only through an executable file in the ASA, meaning that "the system may exercise control over the music" that is available to the user. *Id.* 5:19–35. Specifically, the music may be provided as a "lease" "that must be renewed before expiration," else the music will be "removed or otherwise rendered unplayable." *Id.* 5:42–48.

Additionally, "the system may create and maintain one or more dynamic albums" that are provided through the ASA. *Id.* 6:56–60. The album is "dynamic" because the artist "may introduce new songs, delete old songs, replace one version of a song with another version of a song, . . . re-arrange an order in which the songs of a dynamic album are played . . . and/or otherwise change the dynamic album." *Id.* 7:9–17; *see id.* 25:44–51. The artist does so by setting

3

"album parameters that specify a change to be made to the set of songs." *Id.* 7:1–9; *see also id.*
25:30–26:32.

The specification's description of these processes is almost entirely functional. Where the
patent does mention the physical components that actually accomplish the steps of the processes,
it does so in vague and generic terms. For example, the ASA is generated by a "computer
system" that includes "processors" and "storage devices" and provides instructions to a
"platform management application." *Id.* 7:34–50. The ASA is then downloaded by the user
device, which may likewise include "processors" and "storage devices." *Id.* 10:5–16. The
computer system, after receiving "commands" from the artist, can provide "updates" to the
dynamic albums available through the ASA via a "dynamic album manager." *Id.* 11:1–12,
12:53–62, 26:42–54. Those updates might include deleting songs, adding songs, or replacing
songs. *See id.* 27:34–56. While the specification mentions various computer program instructions
that carry out these and other tasks, *see, e.g.*, *id.* 12:31–39, it does not recite any code or
algorithm for those instructions. Instead, the patent merely describes the instructions
functionally, by what they are intended to do. *See id.*

The patent nowhere suggests that the patentee invented any of the computer components
and techniques mentioned in the specification. On the contrary, the specification states that the
"[c]omputer system 110 and user devices 170" that carry out the claimed invention "may each
include, without limitation, server devices . . . , desktop computers, laptop computers, tablet
computers, mobile computers (e.g., smartphones), dedicated media player devices, and/or
devices that may be programmed with the various computer program instructions described
herein (e.g., platform management application 120, system instructions 122, ASAs 124, etc.)."
*Id.* 34:5–12. In other words, the components and techniques used in the patented methods are

entirely conventional. Indeed, the conventional nature of these components and techniques is clear from the fact that the inventors saw no need to describe them in any detail in the specification, instead assuming that skilled artisans will understand those components and techniques and how they work. *Cf. Hawk Tech. Sys., LLC v. Castle Retail, LLC*, 2021 WL 5832793, at *6 (W.D. Tenn. Sept. 15, 2021) (if patent specification "does not disclose exactly how to achieve the end result," then the skilled artisan "would be left to his or her own devices in order to utilize routine and conventional methods to achieve those results").

Independent claim 1 is illustrative of the asserted claims. The claim is verbose, but it describes a simple concept: updating provider-selected[3] content on a user device. The claim reads as follows:

A computer implemented method for updating a dynamic album that includes a set of songs stored in relation to and played by an artist specific application associated with an artist the method being implemented on a user device having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the user device to perform the method, the method comprising:

receiving, by the user device, one or more album parameters that specify a change to be made to the dynamic album that includes a plurality of songs, wherein the dynamic album is stored via information encoding the plurality of songs at the user device in association with the artist specific application that plays the dynamic album at the user device;

accessing, by the user device, the information encoding the plurality of songs responsive to receipt of the one or more album parameters;

modifying, by the user device, the information encoding the plurality of songs based on the one or more album parameters to change the dynamic album without intervention by a user of the user device;

---

[3] The specification suggests that the provider of the content is the artist (or someone working on the artist's behalf). *See, e.g.*, Ex. A, 4:56–64. But the claims are not so limited; they merely specify that the dynamic album is updated "without intervention by a user of the user device."

> storing, by the user device, the modified information encoding the plurality of songs at the user device; and
>
> playing, by the user device, at least some of the dynamic album through the artist specific application based on the modified information encoding the plurality of songs at the user device.

Ex. A, 35:20–47.

Independent claim 14 is directed to a "system for updating a dynamic album" and substantively mirrors method claim 1. *Id.* 36:34–60. Independent claim 27 recites a method similar to the method of claim 1, except that the claim is written from the computer system's perspective instead of the user device's perspective:

> A computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an artist specific application associated with the artist, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:
>
> > receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist;
> >
> > generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands; and
> >
> > providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device.

*Id.* 38:8–28.

The dependent claims add minor additional limitations, such as specifying that the "album parameters originate from the artist associated with the artist specific application" (claim 2), or that dynamic album is updated by adding (claim 4), removing (claim 5), or replacing (claim 8) a song. *Id.* 35:48–36:12.

The application leading to the '113 patent was filed in October 2014. The Examiner issued a single Office Action, which objected to various informalities in the specification and claims but otherwise allowed the application, generically stating that the application was allowable because the prior art failed to disclose the elements of the independent claims. *See* Jan. 2, 2015 Non-Final Rejection (Ex. B); Feb. 25, 2015 Notice of Allowance (Ex. C).

## LEGAL STANDARD

**Motion to dismiss.** "A claim will survive a Rule 12(b)(6) motion . . . only if the plaintiff alleges facts sufficient 'to state a claim to relief that is plausible on its face.'" *In re: General Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *6 (S.D.N.Y. July 15, 2016) (Furman, J.) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Court accepts all well-pleaded factual allegations of a complaint as true, it need not "accept as true a legal conclusion couched as a factual allegation.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**Patent eligibility.** Laws of nature, natural phenomena, and abstract ideas are ineligible for patenting under 35 U.S.C. § 101. *Alice*, 573 U.S. at 216. Courts follow a two-step framework to analyze patent eligibility. *Id.* at 217.

At step one, the court "determine[s] whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* Particularly relevant here, the Federal Circuit has held that "the concept of delivering user-selected media content to portable devices is an abstract idea." *Affinity Labs*, 838 F.3d at 1269. Moreover, claims that merely "describe a desired function or outcome" without reciting concrete steps to achieve it are generally deemed abstract at *Alice*'s first step. *Id.*

If the claims are directed to an ineligible concept, the court proceeds to step two, where it "consider[s] the elements of each claim both individually and as an ordered combination" to determine whether the claims contain an "inventive concept" that renders the invention patent-

7

eligible. *Alice*, 573 U.S. at 217–18 (internal quotations omitted). Claims that simply use generic computer components and functions to carry out "well-understood, routine, conventional activities previously known to the industry" lack an inventive concept. *Id.* at 225.

Subject-matter eligibility under Section 101 "is a question of law, based on underlying facts." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018). "Like other legal questions based on underlying facts, this question may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *Id.* (collecting cases); *accord Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1346 (Fed. Cir. 2021). Indeed, "[f]ailure to recite statutory subject matter is the sort of 'basic deficiency' that can, and should, 'be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring) (quoting *Twombly*, 550 U.S. at 558). While the eligibility inquiry may sometimes involve underlying issues of fact, such as "whether a claim element or combination of elements is well-understood, routine and conventional," *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367–68 (Fed. Cir. 2018), the patent itself will often demonstrate that the claims involve only well-understood, routine and conventional activity. Thus, "in many cases it is possible and proper" to determine patent eligibility on the pleadings. *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097 (Fed. Cir. 2016). Moreover, in analyzing eligibility, courts may take judicial notice of "fundamental economic concepts and technological developments." *Affinity Labs*, 838 F.3d at 1270 (finding it "not debatable" that the delivery of media content was routine and conventional as of the year 2000).

Similarly, courts may determine patent eligibility prior to claim construction, particularly where claim construction does not "affect the [patent-eligibility] analysis." *Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1184 (Fed. Cir. 2020). That is the case here: the claims use ordinary language and do not require construction for purposes of the § 101 inquiry. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1365 (Fed. Cir. 2020).

## ARGUMENT

### I.     Claim 1 is ineligible for patenting under § 101.

#### A.     *Alice* Step One: Claim 1 is directed to an abstract idea—updating provider-selected media content on a user device.

Claim 1, though lengthy, is directed to a very simple concept. A user device receives from a provider "album parameters" that specify a change to a "dynamic album" implemented on an "artist specific application" on the user's device. The user device then applies those album parameters to modify the songs that comprise the dynamic album and plays the updated album. In other words, the claimed invention involves updating provider-selected media content on a user device. That is an abstract idea under *Alice*'s first step, as the Federal Circuit's decision in *Affinity Labs* makes clear. *See Affinity Labs*, 838 F.3d at 1269.

The representative claim in *Affinity Labs* recited a "media system" comprising (i) a "network based media managing system that maintains a library of content" and a "user interface page," (ii) a "collection of instructions" that allowed the user to select content via the interface and request to stream it, and (iii) a "network based delivery resource" that would respond to the request by retrieving the content and streaming it on the device." *Id.* at 1267–68 & n.2. The claim read in full as follows:

A media system, comprising:

a network based media managing system that maintains a library of content that a given user has a right to access and a customized user interface page for the given user;

a collection of instructions stored in a nontransitory storage medium and configured for execution by a processor of a handheld wireless device, the collection of instructions operable when executed: (1) to initiate presentation of a graphical user interface for the network based media managing system; (2) to facilitate a user selection of content included in the library; and (3) to send a request for a streaming delivery of the content; and

a network based delivery resource maintaining a list of network locations for at least a portion of the content, the network based delivery resource configured to respond to the request by retrieving the portion from an appropriate network location and streaming a representation of the portion to the handheld wireless device.

*Id.* at 1267–68. The Federal Circuit described the claim as "directed to a network-based media system with a customized user interface, in which the system delivers streaming content from a network-based resource upon demand to a handheld wireless electronic device having a graphical user interface." *Id.* at 1268.

The court concluded that the claim was directed to an abstract idea under *Alice* Step One: "the concept of delivering user-selected media content to portable devices is an abstract idea, as that term is used in the section 101 context." *Id.* at 1269. "[S]treaming content generally," the court observed, was "even broader and more abstract" than the concepts earlier Federal Circuit cases had already held unpatentable abstract ideas. *Id.*

In reaching its conclusion, the Federal Circuit noted that the claims merely "describe[d] a desired function or outcome, without providing any limiting detail that confine[d] the claim to a particular solution to an identified problem." *Id.* "The purely functional nature of the claim confirm[ed] that it [was] directed to an abstract idea, not to a concrete embodiment of that idea." *Id.* Finally, the court observed that "the delivery of media content to electronic devices was well known long before the priority date of the [] patent" (March 2000) and that the claims simply

10

implemented that well-known concept using "generic" and "well-known computer components." *Id.* at 1269–70.

Precisely the same conclusion is appropriate here. If "the concept of delivering user-selected media content to portable devices is an abstract idea," *id.* at 1269, so too is the concept of updating provider-selected media content on portable devices. *See also Data Scape Ltd. v. Western Digital Corp.*, 816 F. App'x 461, 463–65 (Fed. Cir. 2020) (citing *Affinity Labs* and holding that claims to methods, systems, and apparatuses for transferring music from one device onto another device were "directed to the abstract idea of selective data storage, transfer, and processing").[4]

Critically, the key purported innovation described by the specification—enabling artists to customize the content of albums available to their users—is itself an abstract concept. The Federal Circuit has squarely "held that 'customizing information based on information known about the user' is an abstract idea." *Affinity Labs*, 838 F.3d at 1271 (alteration omitted) (quoting *Intellectual Ventures I LLC v. Capitol One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015)); *see also British Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020) ("[T]ailoring the provision of information to a user's characteristics, such as location, is an abstract idea."); *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 185

---

[4] *Accord ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 606698, at *3 (D. Del. Feb. 22, 2022) (claims "directed to remotely controlling the recording, storing, delivering, and deleting of media content on a mobile device" were directed to an abstract idea); *Google LLC v. Sonos, Inc.*, 498 F. Supp. 3d 1138, 1151–52 (N.D. Cal. 2020) (claims to a system that determined if media content is available from different content sources and notified the user when the availability of the media content changes were directed to the abstract idea of "collecting information, analyzing it, and providing a notification"); *Search & Social Media Partners v. Facebook, Inc.*, 2019 WL 581616, at *2–5 (D. Del. Feb. 13, 2019) (relying on *Affinity Labs* and holding that a claim to a music organizer and entertainment center that involved management and transmission of compressed data streams and curation based on category (genre) flags was "directed to the abstract idea of accessing music by category").

11

(S.D.N.Y. 2018) (noting that claims to "processes involving the bare customization of content, including the customized presentation of content" are ineligible under § 101). Thus, at best, claim 1 is directed to a combination of the abstract ideas of (i) updating content on a user device and (ii) customizing that content based on the artist's wishes. But a claim directed to a "combination of . . . abstract-idea categories" is deemed abstract as a whole. *FairWarning*, 839 F.3d at 1093–94.

Moreover, like the claims of the patent in *Affinity Labs*, claim 1 of the '113 patent is written in broad, functional terms, describing *ends* (the user device receives album parameters, accesses information, modifies and stores the dynamic album, and then plays it), rather than concrete *means*. And, also like the patent in *Affinity Labs*, the '113 patent "does not disclose any particular mechanism" for updating the content accessible through its artist-specific applications, but instead describes the method at a high "level of generality." 838 F.3d at 1269. "The purely functional nature of the claim confirms that it is directed to an abstract idea." *Id.* So, too, does the sheer breadth of the claims—under EscapeX's infringement theory, these claims would appear to read on virtually any method of updating music playlists on a user device. *See* Dkt. 1-1, Complaint Claim Chart. These claims therefore present precisely the sort of "pre-emption concern[s] that undergird[] [the Supreme Court's] § 101 jurisprudence." *Alice*, 573 U.S. at 223.[5]

Finally, the claimed invention here does not improve computer functionality. The components present in the claims—processors, program instructions, user devices—are entirely

_____

[5] For the avoidance of doubt, Block vehemently disputes EscapeX's infringement allegations. The point, however, is that these claims lend themselves to exactly the kind of preemption problem the Supreme Court has warned against: because the claims are phrased in such vague and abstract terms, EscapeX can (and, indeed, is) using them to pursue infringement allegations against an entire industry that takes advantage of the abstract concept to which the claims are directed.

generic. EscapeX cannot suggest that "those components, at that level of generality, were unknown in the art as of the priority date of the ['113] patent." *Affinity Labs*, 838 F.3d at 1270;[6] *see also Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1378, 1384 (Fed. Cir. 2019) (the "mere automation of manual processes using generic computers . . . does not constitute a patentable improvement in computer technology"); *Joao Bock Transaction Sys., LLC v. Fidelity Nat'l Info. Servs., Inc.*, 122 F. Supp. 3d 1322, 1335 (M.D. Fla. 2015) (memory device, communication device, receiver, transmitter, processing device, input device, display device, and date entry device were "ordinary components of any generic computer"). And the *functions* set forth in the claims involve nothing more than transmitting data, which is a "basic function" of any computer and "not even arguably inventive." *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015) (citations omitted); *accord buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014). In short, the claims "are not directed to any improvement in how a computer functions but merely use computer for their standard functions of storing, transferring, and processing data." *Data Scape*, 816 F. App'x at 464.[7]

*     *     *

In sum, claim 1 of the '113 patent describes the abstract concept of updating provider-selected content on a user device, and it implements that concept using generic computer functionality. Claim 1 is therefore directed to an abstract idea at *Alice* Step One.

---

[6] The '113 patent's priority date is 2014—14 years after the priority date of the patent at issue in *Affinity Labs*. *See* 838 F.3d at 1269.

[7] Even if the *specification* disclosed inventive computer technology (it does not), that would be irrelevant to the eligibility question, because no such technology is recited in the *claims*. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328–29 (Fed. Cir. 2020) ("[A]ny reliance on the specification in the § 101 analysis must always yield to the claim language.") (quoting *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019)).

**B.** ***Alice* Step Two: Claim 1 does not contain an inventive concept because it simply implements the abstract idea using generic computer components and techniques.**

Claims that merely recite the use of general-purpose computers to carry out an abstract idea do not contain an inventive concept**.** *See Alice*, 573 U.S. at 212, 222–23; *Universal Secure Registry*, 10 F.4th at 1350. But, as explained above, that is all claim 1 does. The claimed invention uses generic, functionally defined computer components (such as user devices and processors) and generic computer techniques (such as transmitting, modifying, and storing information) to update the "dynamic album" on the user device. That is not enough to supply an inventive concept. "[M]erely storing, transmitting, retrieving, and writing data to implement an abstract idea on a computer does not transform the claim into a patent-eligible application." *Smartflash LLC v. Apple Inc.*, 680 F. App'x 977, 983 (Fed. Cir. 2017); *see also id.* at 984 (finding that "interfaces," "program stores," and "processors" were generic computer components); *In re Elbaum*, 2021 WL 3923280, at *2 (Fed. Cir. Sept. 2, 2021) ("claim elements recite[d] purely conventional computer functions of storing, receiving, analyzing, and processing data" and therefore did not contain an inventive concept); *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1374 (Fed. Cir. 2017) ("processor," "interface," "memory," "data," "hash identifier" were generic computer components that did not add an inventive concept at step two).

Again, *Affinity Labs* is directly on point. There, the Federal Circuit held that "[f]eatures such as network streaming and a customized user interface do not convert the abstract idea of delivering media content to a handheld electronic device into a concrete solution to a problem." 838 F.3d at 1271. "The features set forth in the claims [were] described and claimed generically rather than with the specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent." *Id.* The same results obtain here: claim 1's

14

recitation of an "artist specific application" that allows the artists to deliver customized content

to users in the form of a "dynamic album" and play that album does not convert the abstract idea

into a concrete solution, because the patent does not specify any concrete or non-generic way of

accomplishing those functions. *See id.* at 1272 ("The patent in this case . . . . claims the general

concept of streaming user-selected content to a portable device. The addition of basic user

customization features to the interface does not alter the abstract nature of the claims and does

not add an inventive component . . . .").

    Put differently, the claim recites "objectives," not "mechanisms." *Kroy IP Holdings, LLC*

*v. Safeway, Inc.*, 107 F. Supp. 3d 677, 704 (E.D. Tex. 2015) (Bryson, J.). The user device

receives album parameters, uses them to modify the dynamic album, and then plays the modified

dynamic album—but the claim is silent as to the concrete mechanisms that actually perform

these functions. That is further evidence that the claimed invention does not improve computers

but instead simply uses existing technology as a tool to automate a conventional practice. *See*

*cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) (finding no

inventive concept because claims were phrased functionally and "provide[d] no useful guidance

as to how th[e] purported function is achieved"). Indeed, the claimed process has clear manual

analogues. Music buffs have been curating and updating mixtapes of their favorite artists since at

least the invention of the cassette player; the patent here simply carries out that process on a

computer (albeit without providing any implementation details concerning how, exactly, the

process is computerized).

    In short, "nothing in the claim[] 'requires anything other than conventional computer and

network components operating according to their ordinary functions.'" *Data Scape*, 816 F.

App'x at 464 (quoting *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017)). It therefore lacks an inventive concept under *Alice* Step Two.

*        *        *

In addressing patent eligibility, courts often reason by analogy, asking whether the claims are similar to "claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016). As should be clear from the preceding discussion, claim 1 here is directly analogous to—indeed, for § 101 purposes, it is indistinguishable from—the claims at issue in *Affinity Labs*. The Federal Circuit's holding that the claims there were ineligible for patenting is therefore dispositive here. Claim 1 is patent-ineligible under 35 U.S.C. § 101.

## II.   The remaining claims are ineligible for patenting for the same reasons as claim 1.

The above analysis focuses on representative claim 1, but the same conclusion holds for the remaining claims. *See Smart Sys.*, 873 F.3d at 1368 n.7 (approving district court's decision to treat a single claim as representative where the patentee could "not identify a meaningful difference between the claims"); *Affinity Labs*, 838 F.3d at 1268 n.2 (treating claim 14 as representative because, although the patentee "ha[d] not conceded that claim 14 is representative . . . it ha[d] not shown how [the other claims] differ materially from claim 14"). Independent claim 14 covers a system that performs the method of claim 1. Thus, as in *Alice*, "the system claims are no different from the method claims in substance. The method claims recite the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." 573 U.S. at 226. And claim 27 recites, in substance, the same method as claim 1, but from a different perspective (that of the computer system instead of that of the user device). Claims 14 and 27 are thus ineligible for the

16

same reasons as claim 1. *See id.*; *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1374 (Fed. Cir. 2011).

The various dependent claims add only trivial limitations and additional layers of abstraction. They therefore do not differ meaningfully from claim 1 for purposes of patent eligibility.

- Claims 2 and 15 recite that the album parameters "originate from the artist associated with the artist-specific application";

- Claims 3 and 16 recite that the information that stores the dynamic album is "integrated with an executable file associated with the artist specific application";

- Claims 4 and 17 recite that the dynamic album is modified by adding a song;

- Claims 5 and 18 recite that the dynamic album is modified by removing a song;

- Claims 6 and 19 recite that the dynamic album is modified by deleting a song;

- Claims 7 and 20 recite that the song is removed by "updating an indicator associated with the song" to "indicate that the song should not be played in association with the dynamic album";

- Claims 8, 9, 21, and 22 recite that the dynamic album is modified by replacing a song;

- Claims 10 and 23 recite that the dynamic album is modified by reshuffling the songs on the album;

- Claims 11 and 24 recite that the dynamic album is "playable at the user device only through the artist specific application";

- Claims 12 and 25 recite that the dynamic album is "subject to a music lease that, when expires, renders the dynamic album unplayable";

- Claims 13 and 26 recite that the dynamic album is played when the artist specific application is initiated;

- Claims 28, 29, and 30 recite that the user device is identified via a "user account identifier" and that album parameters are provided based on the user device's identity "in response to a communication" from the user device.

These additional limitations "may make th[e] claims narrower, [but] they don't make them any less abstract." *Kroy*, 107 F. Supp. 3d at 691; *see FairWarning*, 839 F.3d at 1093–94 (a claim

directed to multiple abstract ideas is still abstract). For example, updating content on a user device by adding, removing, replacing, or reshuffling songs is no less abstract than "the concept of delivering user-selected media content to portable devices" in the first instance. *Affinity Labs*, 838 F.3d at 1269. And providing content to users exclusively subject to specific terms (for example, a music lease) is likewise an abstract concept. *See B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3d 188, 198–204 (D. Del. 2020) (claim reciting a system for playing digital files on a software program "in accordance with the parameters of a license" was directed to the abstract idea of "limiting access to distributed media based on predetermined rules" and contained no inventive concept because the claim simply recited the implementation of that abstract idea using "conventional computer components").

Accordingly, all the claims of the '113 patent are ineligible for patenting for the same reasons as claim 1.

## CONCLUSION

Block respectfully requests that the Court grant the motion and dismiss the complaint with prejudice.

Dated: August 5, 2022

Respectfully submitted,

 /s/ *Daniel S. Block*

Daniel S. Block
Chandrika Vira
William H. Milliken
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005
(202) 371-2600
dblock@sternekessler.com
cvira@sternekessler.com
wmilliken@sternekessler.com

*Counsel for Defendant Block, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on August 5, 2022.

 /s/ *Daniel S. Block*

Daniel S. Block