# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **ESCAPEX IP, LLC,** | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Civil Action No. 1:22-cv-03575-JMF |
| | § | |
| **BLOCK, INC. DBA TIDAL** | § | |
| Defendant | § | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I. RELEVANT FACTUAL BACKGROUND AND INTRODUCTION ......................... 1

II. STANDARD FOR PATENTABLE SUBJECT MATTER ........................................... 2

III. THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART
ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT
MATTER ................................................................................................................... 3

    A. The Claims of the '113 Patent Are Directed to Concrete Steps .............................. 4

    B. Defendant Oversimplifies the Claimed Invention and Ignores Important
       Limitations ................................................................................................................ 8

IV. THERE ARE INVENTIVE ASPECTS OF THE '113 PATENT THAT PRECLUDE
DISMISSAL AT THIS STAGE ................................................................................ 10

    A. The Claims of the '113 Patent Overcome a Specific Problem Arising When
       Providing Artist Control of a Dynamic Album on a User's Device ..................... 10

V. CONCLUSION AND PRAYER ................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016) .......................... 3

*Affinity Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121 (Fed. Cir. 2018) ............. 11

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 134 S. Ct. 2347 (2014) .......................... 2, 5

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015) ................................ 5

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016) ..... 4

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ................................................................. 3

*BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018) .......................................... 11

*ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759 (Fed. Cir. 2019) ....................................... 5

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356 (Fed. Cir. 2018) .................. 2

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ................................................... 8

*Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059 (D. Nev. 2018) ............................ 5

*HP Inc.*, 881 F.3d at 1368 .............................................................................................................. 11

*In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607 (Fed. Cir. 2016) ....................................... 5

*Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343 (Fed. Cir. 2015) .......................... 3

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289 (2012) ........ 2

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299 (Fed. Cir. 2016) .......................... 3

*Messaging Gateway Sols., LLC v. Amdocs, Inc., Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015* ............................................................................... 11, 12

*Microsoft Corp. v. i4i Ltd. P'ship, 564 U.S. 91 (2011)* ................................................................. 11

*Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042 (Fed. Cir. 2016) ............................... 3

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ................................................. 8

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084 (Fed. Cir. 2019) ........................................ 4

*Uniloc USA, Inc. v LG Electronics USA, Inc.*, 957 F.3d 1302 (Fed. Cir. 2020) .......................... 12

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

EscapeX IP, LLC ("EscapeX") files this Response to Defendant Block, Inc. dba Tidal's ("Tidal") Motion to Dismiss[1] ("Defendant's Motion") showing the Court that it should be denied.

## I.  RELEVANT FACTUAL BACKGROUND AND INTRODUCTION

On April 14, 2015, U.S. Patent No. 9,009,113 entitled "System and Method for Generating Artist-Specific Dynamic Albums" was duly and legally issued by the U.S. Patent and Trademark Office.  EscapeX owns the '113 patent by assignment.  The '113 patent relates to novel and improved systems and methods of generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user device at which the dynamic album has been stored.[2]

Embodiments of the claimed invention provide numerous benefits over the prior art, including, but not limited to, modifying the dynamic album based on one or more album parameters that specify a change to be made to the dynamic album.[3]  The patent specification provides that prior to the invention claimed in the '113 patent, an artist would lack control over music consumed by the user.[4] With the claimed invention, the artist may modify the dynamic album parameters to modify the dynamic album provided to a user.[5]

On April 14, 2015, U.S. Patent No. 9,009,113 entitled "System and Method for Generating Artist-Specified Dynamic Albums" was duly and legally issued by the U.S. Patent and Trademark Office.[6]  The priority date for each claim is October 21, 2014.[7]

Claim 27, for example, provides:

---

[1] Doc. No. 19.
[2] Doc. No. 1-2, U.S. Patent No. 9,009,113 ("the '113 patent") at Abstract and 2:19-24.
[3] *See id.* at 2:42-44.
[4] *See id.* at 2:5-6.
[5] See id. at Doc. No. 1-2 at 27:28-40.
[6] *See id.* at page 1.
[7] *See id.* at 1 (60).

1

27. A computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an artist specific application associated with the artist, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:

receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist;

generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands; and

providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device. [8]

## II.     STANDARD FOR PATENTABLE SUBJECT MATTER

The Supreme Court articulated a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts."[9]  At step one, the court must determine whether the claims are directed to one of the three patent-ineligible concepts.[10] If not, "the claims satisfy [Section] 101 and [the court] need not proceed to the second step."[11]  If the claims are directed to a patent-ineligible concept, the court must proceed to the second step of identifying an "inventive concept i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."[12]

---

[8] *See id.* at 38:8-29.
[9] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217, 134 S. Ct. 2347 (2014); *see also Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78, 132 S. Ct. 1289 (2012).
[10] *Alice*, 573 U.S. at 217.
[11] *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018).
[12] *Alice*, 573 U.S. at 217-18 (quoting *Mayo*, 566 U.S. at 72-73).

At step one, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter."[13] However, "courts must be careful to avoid oversimplifying the claims by looking at them generally and failing to account for the specific requirements of the claims."[14]

At step two, the court must "look to both the claim as a whole and the individual claim elements" to determine whether they "amount[ ] to significantly more than a patent upon the ineligible concept itself"[15] "Simply appending conventional steps, specified at a high level of generality, [is] not enough to supply an inventive concept."[16] Instead, the claim elements must involve more than performance of "well-understood, routine, [and] conventional activities previously known to the industry."[17] "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces."[18]

Applying these standards, the claims of the '113 patent are patent eligible.

### III.  THE FOCUS OF THE CLAIMED ADVANCE OVER THE PRIOR ART ESTABLISHES THE CLAIMS ARE DIRECTED TO PATENTABLE SUBJECT MATTER

---

[13] *Internet Patents Corp, v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) ("*DIRECTV*") ("The 'abstract idea' step of the inquiry calls upon us to look at the 'focus of the claimed advance over the prior art' to determine if the claim's 'character as a whole' is directed to excluded subject matter.").
[14] *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (internal quotation marks omitted). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to." *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).
[15] *McRO*, 837 F.3d at 1312.
[16] *Alice*, 573 U.S. at 222
[17] *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73.
[18] *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

The Claims of the '113 patent are directed to improvements in allowing an artist to have control over a dynamic album even though the dynamic album may be in the hands of a user via the users device.[19] The '113 patent's specification teaches the claimed solution for allowing an artist to have some control over a dynamic album was not available prior to the invention of the claims of the '113 patent.[20] Further, there is no record evidence of the claimed solution existing prior to the invention of the claims of the '113 patent and thus there is no record evidence that the claimed improvement for allowing an artist to control a dynamic album on a user's device is conventional.

### A. The Claims of the '113 Patent Are Directed to Concrete Steps

To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[21] a court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter."[22] In other words, abstractness is determined by analyzing the claim as a whole, not whether each element standing alone is abstract.[23] Taking the claim as a whole, the focus of the claims is providing for "an artist to have control over a dynamic album even though the dynamic album may be in the hands of a user via the users device."[24] ("Focus").

This Focus is supported by the Abstract:

> A system and method is provided that facilitate artist-specified dynamic albums that include music that may be changed with or without intervention by a user at a user device at which a dynamic album has been stored, according to an implementation of the invention. A dynamic album may include a set of songs provided through an artist specific application installed at a user device. The system

---

[19] Doc. No. 1-2 at 5:51-55.
[20] *See id.* at 1:34-2:15.
[21] *Alice Corp. Pty. Ltd.*, 573 U.S. at 218.
[22] *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[23] *See e.g., Alice Corp.*, 574 U.S. 208, 219, 134 S. Ct. 2347, 2359 (2014); *Eyetalk365, LLC v. Zmodo Tech. Corp.*, 356 F. Supp. 3d 1059, 1067 (D. Nev. 2018).
[24] Doc. No. 1-2 at 5:51-55, Abstract and Claims, *generally*.

4

may modify the dynamic album based on one or more album parameters that specify a change to be made to the set of songs. . . . [25]

Assessing the focus of the claims from the Abstract is proper as the inquiry may also involve looking to the Abstract or patent specification to understand the problem facing the inventor and, ultimately, what the patent describes as the invention.[26]

The specification describes the prior art:

> The music industry has been evolving as technology provides greater access to music created by artists (e.g., musicians, singers, bands, etc.). For example, music downloads and streaming services have created different models of providing music and other content. However, while providing easier access to music, these different provisioning models have had adverse effects on artists and fans (e.g., users) alike and also fail to integrate music with other content created by the artist.[27]

and,

> . . . there is conventionally little to no connection between actual use (e.g., playback) of songs to income. For instance, in a content streaming model, payment is typically inversely related to usage because payment to artists is typically fixed regardless the number of times an artist's song is streamed, resulting in decreased revenue per stream as the number of streams increases. In a download model, after the initial payment for download, a given song may be played without further monetization opportunities.
>
> Still further, once downloaded or streamed, artists typically lack control over music consumed by the user. Such lack of control prevents the artist from easily providing a new song, deleting an existing song, and/or otherwise exercising control over the music provided to their users. [28]

i.e., the problem was how to allow artist to receive greater control over the use of their content when the content is dispersed as an electronic file that can only be accessed electronically, such as by a user device.

---

[25] *See id* 1:29-31, Abstract.
[26] *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019) *citing TLI Communs. LLC v. AV Auto., L.L.C. (In re TLI Communs. LLC Patent Litig.)*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015) (in the step one analysis, pointing to statements from the specification that supported the identified focus was the key discovery described in the patent).
[27] Doc. No. 1-2 at 1:30-38.
[28] Doc. No. 1-2 at 1:63-2:6.

Further support for this Focus is provided in the claims. For example, claim 27 recites:

> 27. A computer implemented method for receiving commands from an artist to update a dynamic album at a user device that includes a set of songs stored in relation to and played by an artist specific application associated with the artist, the method being implemented on a computer system having one or more physical processors programmed with computer program instructions that, when executed by the one or more physical processors, cause the computer system to perform the method, the method comprising:
>
> receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist;
>
> generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands; and
>
> providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device. [29]

The specification of the '113 patent provides further support for the Focus in the Summary of the Invention where it specifies:

> "systems and methods of generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user at a user device at which a dynamic album has been stored, according to an implementation of the invention. [30]

The specification continues:

> A dynamic album may include a set of songs provided through an artist specific application installed at a user device. [31] A dynamic album may be stored at a user device.[32] The system may modify the dynamic album based on one or more album parameters that specify a change to be made to the set of songs. [33]The album parameters may be specified by an artist. In this manner, an artist may use

---

[29] *See id.* at 38:8-29.
[30] *See id* at 2:20-24.
[31] *See id* at 2:25-26.
[32] *See id* at 2:33.
[33] *See id* at 2:42-44.

6

> the features and functions of a dynamic album to send music and/or other updates to the dynamic album. [34]

and

> A dynamic album may include a set of songs provided through an ASA installed at user device **170**. The dynamic album may be stored at the user device **170** [35]

However,

> the system may modify the set of songs without intervention by the user of user device **170**. Thus, while a user may be able to listen to a dynamic album at the user device **170** even without a network connection, the system may maintain control over the dynamic album. [36]

The '113 patent specification provides substantial detail for the claimed invention and its interconnectivity with each claimed element for sufficient specificity to be concrete.[37] For instance, the claim provides the following details explaining how an artist to have control over a dynamic album even though the dynamic album may be in the hands of a user via the user's device:

> (1) receiving, by the computer system, from the artist, one or more commands that specify a change to be made to the dynamic album played at the user device through the artist specific application associated with the artist;
>
> (2) generating, by the computer system, one or more album parameters used to change the dynamic album based on the one or more commands; and
>
> (3) providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system at which the artist specific application is installed, wherein the one or more album parameters cause the user device to change the dynamic album in association with the artist specific application without intervention by a user of the user device.[38]

---

[34] *See id* at 2:50-53.
[35] *See id* at 6:57-59.
[36] *See id* at 6:61-66.
[37] *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).
[38] Doc. No. 1-2 at 38:16-29.

Accordingly, the claim recites sufficient granularity to provide concrete steps.

### B. Defendant Oversimplifies the Claimed Invention and Ignores Important Limitations.

Defendant's Motion is an oversimplification and focuses on claim elements rather than the claim as a whole. Defendant "describe[s] the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to §101 swallow the rule."[39] For instance, Defendant's Motion opens its argument over-generalizing the teachings of the patent by providing that "the claimed invention involves updating provider selected media content on a user device"[40] The Defendant then goes on to associate this generalization with a streaming service.[41] Of course the specification also mentions streaming services in its description of the background.[42] As previously mentioned, the claims here reference more than simply updating media content, they refer to implementing a dynamic album allowing the artist control over the dynamic album on a user's device without input from the user.

The Plaintiff has not attempted to claim streaming media but has focused on providing the artist with control over the dynamic album on a user's device without input from the user.[43] Further, the system may maintain control over the dynamic album, even without a network connection.[44]

The Defendant uses "streaming" throughout Defendant's Motion however "streaming" is not mentioned or claimed. The specification tells us again and again that a "streaming" services are prior art.[45] Streaming is defined as "a method of transmitting or receiving data (especially

---

[39] *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016).
[40] Defendant's Motion at 9.
[41] Defendant's Motion at 9.
[42] Doc. No. 1-2 at 1:33; 1:44-49; 1:65-2:2; 2:5-9.
[43] *See id* at 6:51-67.
[44] *See id* at 6:65-67.
[45] Doc. No. 1-2 at 1:33; 1:44-49; 1:65-2:2; 2:5-9.

8

video and audio material) over a computer network as a *steady, continuous flow*, allowing playback to start while the rest of the data is still being received."[46] The claimed invention may maintain control even without a network connection. [47]

Additionally, this is not a case where a computer is an added element to automate what was done manually before, rather Plaintiff's claimed invention is directed to a solution to a problem that is not capable of being done manually. An electronic file, such as music, is transmitted from one computer system to another computer system where it can be stored, manipulated, or played. The claimed invention is how to perform the file manipulation on the second computer system when the second computer system is inaccessible to the artist.[48] If the claims were simply "apply it with a computer" then the claimed invention could be accomplished without a computer. In this instance the file transmission and the file manipulation are impossible without a computer.

The claims of the '113 patent represent an improvement in the ability to provide at least some artist control over their songs. A correct analysis of Claim 27 of the '113 patent with the claim at issue in *Alice* illustrates the vast difference in the claimed subject matter and when taken with the described and claimed solution of "generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user device at which the dynamic album has been stored"[49] that was not available prior to the invention of the '113 patent illustrates that the claims are patent eligible.

---

[46] https://www.google.com/search?q=streaming+definition&sxsrf=ALiCzsYkLU7O89ruFm_ROqVOUQBBviN04g%3A1660873680399&source=hp&ei=0Ov-YvuuE-TFqtsP2P6-iAs&iflsig=AJiK0e8AAAAAYv754HRem3e0JZgSyU4AZ4Yjl21ROZMf&ved=0ahUKEwj71u3N5NH5AhXkomoFHVi_D7EQ4dUDCAg&uact=5&oq=streaming+definition&gs_lcp=Cgdnd3Mtd2l6EAMyBQgAEIAEMgUIABCABDIFCAAQgAQyBQgAEIAEMgUIABCABDIFCAAQgAQyBQgAEIAEOgcIIxDqAhAnOgQIIxAnOhEILhCABBCxAxCDARDHARDRAzoLCAAQgAQQsQMQgwE6CwguEIAEEDEMBENQCOgsILhCABBDHARDRAzoICC4QgAQQsQM6DgguEIAEELEDEMcBENEDOggIABCABBCxAzoLCAAQgAQQyQMQgwE6BQgAEJIDOgsILhCABBDHARCvATOLCC4QgAQQsQMQgwE1AI6BQgAEIYDOgQIABAKUJgIWN2KAWCCkQFoAnAAeACAAWSIAfoLkgEEMjAuMZgBAKABAbABCg&sclient=gws-wiz.

[47] Doc No. 1-2 at 6:65-67.

[48] Doc. No. 1-2 at 2:20-61.

[49] Doc. No. 1-2, U.S. Patent No. 9,009,113 ("the '113 patent") at Abstract and 2:19-24.

9

## IV. THERE ARE INVENTIVE ASPECTS OF THE '113 PATENT THAT PRECLUDE DISMISSAL AT THIS STAGE.

To evaluate whether asserted claims satisfy *Alice*'s second step of "search[ing] for an 'inventive concept,'"[50] a court considers "the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application."[51] While a court may determine patent eligibility at the Rule 12(b)(6) stage, it is "only when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law."[52] "Plausible factual allegations may preclude dismissing a case under § 101."[53] All facts pertinent to the eligibility question must be proven by clear and convincing evidence.[54] Here, Plaintiff makes numerous factual allegations in the patent specification that are not rebutted by Defendant.

### A. The Claims of the '113 Patent Overcome a Specific Problem Arising When Providing Artist Control of a Dynamic Album on a User's Device.

The Claims of the '113 patent provide a solution to a specific problem arising in e-commerce, namely providing artist control of a dynamic album on a user's device.[55] The patent specification provides that such control was not possible prior to the claimed invention, limiting an artist to disseminating their music without further input via downloads or streaming services.[56] Thus, the claimed improvements cannot be said to be conventional when viewing the claim as a whole.

---

[50] *Alice*, 573 U.S. at 217, 134 S.Ct. 2347.
[51] *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1289 (Fed. Cir. 2018).
[52] *Affinity Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).
[53] *Id.*
[54] *HP Inc.*, 881 F.3d at 1368 citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).
[55] Doc. No. 1-2 at 1:34-2:15.
[56] *See id.* at 1:34-2:15.

Stated another way, the claims of the '113 patent are patentable for similar reasons that the claims in *Messaging Gateway Sols., LLC v. Amdocs, Inc.*[57] were found patentable wherein the court in that case found the claims "directed to a problem unique to text-message telecommunication between a mobile device and a computer. The solution [ ] it provides is tethered to the technology that created the problem."[58] Similarly, the '113 patent provides a solution for an artist to have continued input to the dissemination of their music by "generating artist-specified dynamic albums that include music that may be changed with or without intervention by a user device at which the dynamic album has been stored"[59]

Additionally, the claims of the '113 patent are further patentable for similar reasons that the claims in *Uniloc USA, Inc. v. LG Electronics USA, Inc..*[60] were found patentable wherein the court in that case found the "claimed invention's compatibility with conventional communications systems does not render it abstract.  Nor does the fact that the improvement is not defined by reference to "physical" components"[61] The court noted that, "the specification explains that the invention improves conventional communication systems."[62] Here, the specification explains that the claimed invention allows artist-specified dynamic albums that include music that may be changed with or without intervention by a user device at which the dynamic album has been stored"[63]

---

[57] Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015).
[58] *Messaging Gateway Sols., LLC v. Amdocs, Inc.*, Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408, at *15-16 (D. Del. Apr. 15, 2015).
[59] Doc. No. 1-2, U.S. Patent No. 9,009,113 ("the '113 patent") at Abstract and 2:19-24; 38:8-29.
[60] *Uniloc USA, Inc. v LG Electronics USA, Inc.,* 957 F.3d 1302, 1312 (Fed. Cir. 2020).
[61] Civil Action No. 14-732-RGA, 2015 U.S. Dist. LEXIS 49408 (D. Del. Apr. 15, 2015).
[62] *Uniloc USA, Inc. v LG Electronics USA, Inc.,* 957 F.3d 1302, 1305 (Fed. Cir. 2020).
[63] Doc. No. 1-2, U.S. Patent No. 9,009,113 ("the '113 patent") at Abstract and 2:19-24; 38:8-29.

## V. CONCLUSION AND PRAYER

Plaintiff EscapeX IP, LLC respectfully requests and prays that the Court deny, in its entirety, Defendant's Motion to Dismiss.

Respectfully submitted,

/s/ David J. Hoffman
David J. Hoffman
254 W 15th St., Apt. 2C
New York, New York 10011
(917) 701-3117 (telephone)
djhoffman@djhoffmanlaw.com

Ramey LLP
William P. Ramey, III (Pro Hac Vice anticipated)
Texas State Bar No. 24027643
5020 Montrose Blvd., Suite 800
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

***Attorneys for EscapeX IP, LLC***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure, I hereby certify that all counsel of record who have appeared in this case are being served on this day of August 26, 2022, with a copy of the foregoing via e-mail.

/s/ David J. Hoffman
David J. Hoffman