UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EscapeX IP LLC<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>Block, Inc.<br><br>　　　　　Defendant. | Civil Action No. 1:22-cv-03575-JMF<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT BLOCK, INC.'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO CLAIM
PATENTABLE SUBJECT MATTER UNDER 35 U.S.C. § 101**

**TABLE OF CONTENTS**

I.   The Federal Circuit's precedential decision in *Affinity Labs* resolves this case. ................. 1

II.  EscapeX's arguments against dismissal are meritless. ....................................................... 1

III. The Court should dismiss the complaint with prejudice. ..................................................... 8

IV.  Conclusion ........................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)..................................................................................................7

*Affinity Labs of Tex., LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)........................................................................................ passim

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)....................................................................................................................1

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
  967 F.3d 1285 (Fed. Cir. 2020)..............................................................................................3, 5

*Berkheimer v. HP Inc.*,
  881 F.3d 1360, 1368 (Fed. Cir. 2018) .......................................................................................5

*Bilski v. Kappos*,
  561 U.S. 593 (2010)....................................................................................................................1

*British Telecomms. PLC v. IAC/InterActiveCorp*,
  813 F. App'x 584 (Fed. Cir. 2020) ............................................................................................2

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281, 1290 (Fed. Cir. 2018) .......................................................................................5

*ClearDoc, Inc. v. RiversideFM, Inc.*,
  2022 WL 3355960 (D. Del. Aug. 15, 2022) ..........................................................................2, 6

*ClearDoc, Inc. v. RiversideFM, Inc.*,
  2022 WL 606698 (D. Del. Feb. 22, 2022) ................................................................................1

*Chargepoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759, 774 (Fed. Cir. 2019) ...........................................................................................5

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021)..................................................................................................4

*Data Scape Ltd. v. Western Digital Corp.*,
  816 F. App'x 461 (Fed. Cir. 2020) ............................................................................................1

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
  955 F.3d 1317 (Fed. Cir. 2020)..................................................................................................3

*Google LLC v. Sonos, Inc.*,
   498 F. Supp. 3d 1138 (N.D. Cal. 2020) ................................................................................. 2

*In re Killian*,
   2022 WL 3589496 (Fed. Cir. Aug. 23, 2022) ..................................................................... 3, 8

*Intellectual Ventures I LLC v. Capitol One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ............................................................................................ 2

*Intellectual Ventures I LLC v. Symantec Corp.*,
   838 F.3d 1307 (Fed. Cir. 2016) ............................................................................................ 7

*Intellectual Ventures I, LLC v. Motorola Mobility LLC*,
   81 F. Supp. 3d 356 (D. Del. 2015) ....................................................................................... 7

*Messaging Gateway Solutions, LLC v. Amdocs, Inc.*,
   2015 WL 1744343 (D. Del. Apr. 15, 2015) ......................................................................... 7

*Quantum Stream Inc. v. Charter Commc'ns, Inc.*,
   309 F. Supp. 3d 171 (S.D.N.Y. 2018) .................................................................................. 2

*Search & Social Media Partners v. Facebook, Inc.*,
   2019 WL 581616 (D. Del. Feb. 13, 2019) ............................................................................ 2

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017) ............................................................................................ 3

*Synopsys, Inc. v. Mentor Graphics Corp.*,
   839 F.3d 1138 (Fed. Cir. 2016) ............................................................................................ 4

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014) .............................................................................................. 3

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*,
   957 F.3d 1303 (Fed. Cir. 2020) ............................................................................................ 8

**Statutes**

35 U.S.C. § 101 ........................................................................................................................ 4, 6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6) .................................................................................... 8

**I.      The Federal Circuit's precedential decision in *Affinity Labs* resolves this case.**

Patent eligibility can be a complex area of the law, and some cases present difficult questions. This is not one of those cases. As Block's opening brief showed (at 9–16), the claims of the '113 patent are materially indistinguishable from the claims in *Affinity Labs of Texas, LLC v. Amazon.com, Inc.*, 838 F.3d 1266 (Fed. Cir. 2016). The claims there implemented the abstract idea of "delivering user-selected media content to portable devices" using "generic" and "well-known computer components." *Id.* at 1269–70. The claims here implement the abstract idea of updating provider-selected media content on a user device using generic and well-known computer components. Just as the Federal Circuit found the *Affinity Labs* claims to be ineligible, the '113 patent claims are too.

Accordingly, this Court "need not labor to delimit the precise contours of the 'abstract ideas' category in this case . . . . It is enough to recognize that there is no meaningful distinction between" the facts of *Affinity Labs* and the facts here. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014) (finding claims directed to "the concept of intermediated settlement" ineligible because there was "no meaningful distinction between the concept of risk hedging in *Bilski* [*v. Kappos*, 561 U.S. 593 (2010)] and the concept . . . at issue here"). *Affinity Labs* is dispositive. The Court need go no further than that to grant Block's motion.

**II.     EscapeX's arguments against dismissal are meritless.**

EscapeX's response does not even cite, much less attempt to distinguish, *Affinity Labs*—a silence that speaks volumes. Nor does EscapeX engage with the many other highly relevant cases Block cited finding claims directed to delivery of media content ineligible for patenting. *See* Op. Br. 11 & n.4 (citing *Data Scape Ltd. v. Western Digital Corp.*, 816 F. App'x 461 (Fed. Cir. 2020); *ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 606698 (D. Del. Feb. 22, 2022);

*Google LLC v. Sonos, Inc.*, 498 F. Supp. 3d 1138 (N.D. Cal. 2020); *Search & Social Media Partners v. Facebook, Inc.*, 2019 WL 581616 (D. Del. Feb. 13, 2019)). Instead, EscapeX advances four categories of counterarguments. None have merit.

**A.**     EscapeX's principal contention (*e.g.*, at 1, 4, 7) is that the '113 patent claims are eligible because the claimed invention allows "an artist to have control over a dynamic album even though the dynamic album may be in the hands of a user via the user's device." This argument fails for two reasons.

*First*, the concept of allowing an artist to control the contents of an album after delivery to the user's device is itself an abstract idea and so cannot impart eligibility. *See, e.g.*, *ClearDoc, Inc. v. RiversideFM, Inc.*, 2022 WL 3355960, at *3 (D. Del. Aug. 15, 2022) ("*ClearDoc II*") (claims to "remotely controlling the recording, storing, and delivering of media content on a mobile device" were directed to an abstract idea). Block's opening brief made this point explicitly: "the key purported innovation described by the specification—enabling artists to customize the content of albums available to their users—is itself an abstract concept." Op. Br. 11. And Block cited multiple cases holding that the concept of "customizing information" is abstract. *Id.* at 11–12 (citing *Affinity Labs*, 838 F.3d at 1271; *Intellectual Ventures I LLC v. Capitol One Bank (USA)*, 792 F.3d 1363, 1369 (Fed. Cir. 2015); *British Telecomms. PLC v. IAC/InterActiveCorp*, 813 F. App'x 584, 587 (Fed. Cir. 2020); *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 185 (S.D.N.Y. 2018)). As with *Affinity Labs*, EscapeX does not even bother to cite these cases, much less attempt to distinguish them.

*Second*, allowing an artist to control a dynamic album on a user device is not an invention; it is a *result*. Yet again, *Affinity Labs* is directly on point. "[P]urely functional" claims—that is, those that "do no more than describe a desired function or outcome, without

providing any limiting detail that confines the claim[s] to a particular solution to an identified problem"—are ineligible for patenting. 838 F.3d at 1269; *see also id.* at 1271; *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) ("[T]he claim itself . . . must go beyond stating a functional result; it must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness . . . ."); *In re Killian*, --- F.4th ----, 2022 WL 3589496, at *6 (Fed. Cir. Aug. 23, 2022) (same). But that is all the '113 patent claims do.

Specifically, claim 27—which EscapeX treats (at 2, 6) as representative—does not recite a "concrete embodiment" of the purported invention, *Affinity Labs*, 838 F.3d at 1269.[1] Instead, as ExcapeX's own summary of the claim makes clear, the claim recites the use of a generic computer's information-transmission capabilities to accomplish the *result* of allowing the artist to modify the dynamic album on the user's device. *See* EscapeX Br. 7. That is insufficient for eligibility. "[T]he transfer of content between computers is merely what computers do and does not change the [eligibility] analysis." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 717 (Fed. Cir. 2014); *accord Killian*, 2022 WL 3589496, at *4 ("[C]laims pertaining to data gathering, analysis, and notification on generic computers [are] directed to abstract ideas . . . ."). To the extent EscapeX means to suggest that that claim's reference to "generating . . . album parameters" supplies the requisite concreteness, EscapeX is wrong. That is simply a jargon-laden way of saying that the computer tells the user device what changes to the dynamic album it should make. *See Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1326 (Fed.

---

[1] EscapeX does not argue that any of the remaining claims contain limitations that are material to patent eligibility. The Court thus may treat claim 27 as representative and need not consider the other claims separately. *See Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017) (approving of district court's analysis of one representative claim because patentee had not "identif[ied] a meaningful difference between the claims").

3

Cir. 2020) (finding that claim, "[a]lthough written in technical jargon," was "directed to the abstract idea of controlling access to . . . resources"). Neither the claim nor the specification supplies any details about these "parameters" or how they work save for saying that they accomplish the result of allowing the system to make changes to the dynamic album. And EscapeX identifies no other claim limitations that impart any concreteness.

EscapeX accuses (at 8) Block of "oversimplif[ying]" the claims. That assertion is belied by EscapeX's own summary of what the claims cover. EscapeX says (at 8) that the claims "refer to implementing a dynamic album allowing the artist control over the dynamic album on a user's device without input from the user." There is no substantive distinction between that formulation and Block's: "updating provider-selected media content on a user device." Op. Br. 9. EscapeX's summary just uses more words. And, no matter which formulation is used, the result is the same: the '113 patent claims are directed to an abstract, functional result, not a technological innovation. *See Affinity Labs*, 838 F.3d at 1269. They are therefore ineligible under § 101.

**B.** EscapeX also asserts (at 3–4, 9–10) that the claimed "solution" did not "exist[] prior to the invention of the claims of the '113 patent." Even if this were true,[2] it would not matter. "[A] claim for a new abstract idea is still an abstract idea" and therefore still ineligible for patenting. *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016); *see cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1380 (Fed. Cir. 2021) ("[O]ur cases are clear that a patent claim is not eligible under § 101 merely because it recites novel subject matter.").

---

[2] In fact, the claimed solution *is* found in the prior art, but the Court need not address that issue for purposes of this motion.

To the extent EscapeX means to argue that the purported novelty of its solution creates a factual dispute "regarding whether the claim element or claimed combination is well-understood, routine, [or] conventional" under *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018), EscapeX is wrong. *Berkheimer* is about Step Two of the *Alice* analysis, where factual disputes about whether particular elements impart an inventive concept to an otherwise abstract claim can preclude summary resolution of patent eligibility. *See id*. *Berkheimer* is inapposite here because the purportedly unconventional aspect of the '113 patent invention—the concept of "providing artist control of a dynamic album on a user's device," EscapeX Br. 10—is just a statement of the abstract idea and so cannot impart an inventive concept as a matter of law. *See, e.g.*, *Chargepoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019) (rejecting patentee's argument that the purportedly novel "ability to operate charging stations remotely" enabled by the claimed invention supplied an inventive concept because "[t]his . . . merely mirror[ed] the abstract idea itself"); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (similar).

    **C.**    Next, EscapeX suggests (at 8, 9), citing the patent specification, that the claimed invention achieves a technological advance because the artist can "maintain control" over the dynamic album "even without a network connection." This argument suffers from multiple flaws.

*First,* and most fundamentally, the *claims* say nothing about this purported feature. Tellingly, EscapeX's citations for this proposition (at 7 n.36, 8 n.44, 9 n.47) are exclusively to the patent specification. As Block's opening brief explained (at 13 n.7), the patent-eligibility analysis must always focus on the claims. Reciting inventive steps in the specification is not sufficient. *See also Am. Axle*, 967 F.3d at 1293 ("[W]e have repeatedly held that features that are

5

not claimed are irrelevant as to step 1 or step 2 of the *Mayo/Alice* analysis.") (collecting cases). Because the *claims* do not recite any concrete means for allowing the artist to update the dynamic album where the user device has no network connection, this purported innovation does not impact the eligibility analysis.

*Second*, even if resort to the specification were proper, EscapeX mischaracterizes the passage on which it relies. The cited portion of the specification discloses that the user can "*listen to a dynamic album* at the user device 170 even without a network connection." '113 patent 6:63–65. The specification does *not* say, as EscapeX misleadingly suggests, that the artist can *modify the dynamic album* while the user device is not connected to a network.[3]

*Third*, even if the patent described allowing an artist to modify an album on a user device that is not connected to a network (it does not), and even if this feature were recited in the claims (it is not), this purported functionality would *still* not impact the eligibility analysis. That is because this feature—like the concept of updating provider-selected content on a user device generally—is merely a "desired function or outcome." *Affinity Labs*, 838 F.3d at 1269. The patent nowhere describes a "concrete technological" *means* for achieving that function. *Id.* Again, a patent that does not "go beyond stating the relevant functions in general terms" is not eligible under § 101. *Id.* at 1271; *see also ClearDoc II*, 2022 WL 3355960, at *4 ("A software feature can be implemented in a number of ways. It is the technical implementation that can be inventive. The feature itself is just an abstract idea.").

**D.** Finally, EscapeX contends (at 9–10) that the claims are eligible because they do not have a manual analogue and instead are directed "to a specific problem arising in e-

---

[3] Nor does EscapeX's suggestion that two physically separate devices could communicate absent some sort of connection between them make any sense.

commerce, namely providing artist control of a dynamic album on a user's device." But abstract ideas are no less abstract merely because they "originated in the computer era." *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1319 (Fed. Cir. 2016). Accordingly, courts have held ineligible claims directed to the computer-era concepts of

- computer virus screening, *see id.*
- filtering e-mail, *see id.* at 1314;
- streaming media content to user devices, *see Affinity Labs*, 838 F.3d at 1269;
- delivering broadcast content to cellular phones, *see Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258–59 (Fed. Cir. 2016); and
- distributing software updates to a computer, *see Intellectual Ventures I, LLC v. Motorola Mobility LLC*, 81 F. Supp. 3d 356, 364–366 (D. Del. 2015),

just to name a few. The '113 patent's focus on a "problem arising in e-commerce," EscapeX Br. 10, thus does not save it from ineligibility. The claims are still fatally functional and abstract.

EscapeX's reliance (at 11) on the pre-*Affinity Labs* district-court decision in *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, 2015 WL 1744343 (D. Del. Apr. 15, 2015), is misplaced. In that case, the claim at issue "specifie[d] how an interaction between a mobile phone and a computer is manipulated" in order to achieve transmission of "SMS text messages between a mobile device and the Internet." *Id.* at *5. In other words, the claim did not merely recite an abstract result; it also specified a concrete and technological means by which that result was achieved. The claims here, in contrast, are written at a fatally high level of generality: they recite a desired result (updating provider-selected media content on a user device) using nothing more than the conventional information-transmission capabilities of generic computers. Because "[t]he features set forth in the claims are described and claimed generically rather than with the

specificity necessary to show how those components provide a concrete solution to the problem addressed by the patent," *Affinity Labs*, 838 F.3d at 1271, they are ineligible.

*Uniloc USA, Inc. v. LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020) (cited at EscapeX Br. 11), is inapposite for similar reasons. The claims there recited a specific technological means—namely, use of an "additional data field"—that "reduc[ed] latency experienced by parked secondary stations" in communications between a base station and secondary stations. *Id.* at 1307–08; *see also id.* at 1309 ("The claimed addition of a data field for polling to the inquiry message significantly reduces the response time, enabling secondary stations to respond a fraction of a second later."). The patent was eligible because it specifically described an "improvement to computer functionality." *Id.* at 1307. The '113 patent claims, in contrast, do not "improve[ ] computer capabilities"; instead, they use computers "merely as a tool" for implementing an abstract concept. *Killian*, 2022 WL 3589496, at *6.

**III.    The Court should dismiss the complaint with prejudice.**

EscapeX's assertion (at 10) that there are somehow factual disputes that preclude dismissal at the Rule 12(b)(6) stage is also meritless. EscapeX does not and cannot identify a single factual dispute that bears on the eligibility analysis. Indeed, as explained above, *see supra* p. 4, the parties' respective articulations of the claims' focus are substantively identical. The only question is the *legal* one of whether, given that focus, the claims are eligible for patenting. *Affinity Labs* (which, it bears noting, was itself resolved on a motion to dismiss) permits only one answer to that legal question: no. This Court should therefore dismiss the complaint.

The dismissal, moreover, should be with prejudice. The Court has already provided EscapeX with one opportunity to amend the complaint, explicitly noting that Escape X would "not be given any further opportunity to amend the complaint to address issues raised by the

motion to dismiss." Dkt. 22. EscapeX declined to amend its complaint—an implicit acknowledgement that it is unable to plead any additional facts that might impact the eligibility question. That is not surprising. No amount of pleading—however artful—could escape the watertight analogy between this case and *Affinity Labs*.

## IV.   Conclusion

Block respectfully requests that the Court dismiss the complaint with prejudice.

Dated: September 2, 2022

Respectfully submitted,

 /s/ *Daniel S. Block*
Daniel S. Block
Chandrika Vira
William H. Milliken
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005
(202) 371-2600
dblock@sternekessler.com
cvira@sternekessler.com
wmilliken@sternekessler.com

*Counsel for Defendant Block, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on September 2, 2022.

    /s/ *Daniel S. Block*
Daniel S. Block