```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                       :
ESCAPEX IP LLC,                                                        :
                                                                       :
                                Plaintiff,                             :
                                                                       :           22-CV-3575 (JMF)
                -v-                                                    :
                                                                       :           OPINION AND ORDER
BLOCK, INC.,                                                           :
                                                                       :
                                Defendant.                             :
                                                                       :
-----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

  EscapeX IP LLC ("EscapeX") brings this patent infringement case against Block, Inc. ("Block"), better known as Tidal. EscapeX alleges infringement of U.S. Patent No. 9,009,113 (the "'113 Patent"), a process for allowing artists to update "dynamic albums" that are stored on user devices. ECF No. 21-1 ("Patent"). According to EscapeX, Block infringes every claim of the Patent by generating curated playlists based on users' listening patterns. *See* ECF No. 9 ("FAC"), ¶¶ 9-10; ECF No. 9-1. Block now moves, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss on the ground that the '113 Patent's claims are directed to an abstract idea and therefore ineligible for patent protection. *See* ECF No. 20 ("Def.'s Mem."), at 1-2. For the reasons that follow, the Court agrees and, thus, GRANTS the motion to dismiss.

## BACKGROUND

  The following facts, drawn from the First Amended Complaint and the underlying patent, are presumed to be true for purposes of this motion. *See, e.g.*, *Karmely v. Wertheimer*, 737 F.3d 197, 199 (2d Cir. 2013); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) (noting that, for purposes of a Rule 12(b)(6) motion, "the complaint is deemed to include . . .

documents incorporated in it by reference" or documents "integral" to the complaint (internal quotation marks omitted)).

EscapeX owns the '113 Patent. FAC ¶ 7. Titled "System and Method for Generating Artist-Specified Dynamic Albums," the patent was issued on April 14, 2015. *Id.* The purpose of the '113 Patent is to create a system that allows for the modification of an album stored on a user device "without intervention by the user." Patent 2:34-35 (Summary of Invention). Put differently, the patent enables artists to push updates — of songs or other media — to users' devices. According to its specification, the patent seeks to remedy certain problems that currently exist with music streaming, including artists' inability to effectively monetize their music, their lack of control over content once users have downloaded it, and the disconnect between streaming services and artists' social media pages. *Id.* 1:50-2:9.

The '113 Patent purports to remedy these problems through thirty claims, including three independent claims. EscapeX principally focuses on Independent Claim 27, which claims a "computer implemented method" for receiving instructions from an artist to update a dynamic album stored on a user device. *Id.* 38:7-15. The artist provides a command to change one or more songs within the album; the computer system that receives this command generates "album parameters"; the computer system then remotely communicates these parameters to the user device, which updates the album without user intervention. *Id.* at 38:16-28. Although EscapeX does not explicitly argue that Claim 27 is representative, it focuses on that claim in its opposition, *see* ECF No. 23 ("Pl.'s Opp'n"), at 1-2, and the other two independent claims — Claims 1 and 14 — describe the same method from the perspective of the user device receiving the album update (Claim 1) and from the computer system facilitating the update (Claim 14). *Id.* at 35:20-46; 36:35-60.

The dependent claims add various limitations to the method, specifying the types of changes that album parameters may require, *id.* at 35:55-36:21, 37:1-34; that the album may be subject to a renewable "music lease," *id.* at 36:25-31, 37:39-38:3; and that the computer system identifies the user device based on some sort of "identifying information," *id.* at 38:29-37. Further, dependent claims 3 and 16 clarify that the album information is encoded in an "executable file" within artist-specific applications. *Id.* at 35:52-54, 36:65-67. The patent specification provides additional context for the goals of this method. In short, it gives the artist control over their content. *Id.* at 8:46-55. The artist can, in addition to modifying the songs in the dynamic album, give out loyalty rewards, endorse products or causes, and send messages to fans. *Id.* at 14:43-15:13, 18:4-30, 26:1-10. Critically, according to the specification, the computer system can maintain control over the dynamic album on a user device even while the device does not have a network connection. *Id.* at 6:61-66; *see also* Pl.'s Opp'n 8.

EscapeX alleges that Block infringes the '113 Patent by generating song mixes, curated to each user, that change based on the user's activity. ECF No. 9-1. Block moves to dismiss on the ground that the '113 Patent is not eligible for patent protection. Def.'s Mem. 1.

## APPLICABLE LEGAL STANDARDS

As noted, Block moves to dismiss the First Amended Complaint on the ground that the claims of the '113 Patent are unpatentable on their face because they are directed at an abstract idea. *See* Def.'s Mem. 1-2, 9-18. Thus, the only question at this stage is whether the claims are patentable.

**A. Standard of Review**

In evaluating that question, the Court must accept all facts set forth in the First Amended Complaint as true and draw all reasonable inferences in EscapeX's favor. *See, e.g.*, *Burch v.*

3

*Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008).  A claim will survive Block's Rule 12(b)(6) motion, however, only if EscapeX alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  Thus, EscapeX must show "more than a sheer possibility that [Block] has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555.  If EscapeX's pleadings "have not nudged [its] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570.

**B.  Patent Eligibility**

As noted, the sole question here is whether the claims in the '113 Patent are patentable. Section 101 of the Patent Act authorizes inventors to obtain patents for "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  Significantly, however, "laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014) (cleaned up); *accord Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980).  That is because these are "the basic tools of scientific and technological work," *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972), and to award a patent for their discovery would risk "inhibit[ing] further discovery by improperly tying up the future use of" such tools, *Mayo Collaborative Svcs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 85 (2012).  At the same time, the Supreme Court has warned against construing this exception too broadly, "lest it swallow all of patent law." *Alice*, 573 U.S. at 217.  An invention that applies an abstract idea or law of nature "to a new and useful

4

end" may, therefore, be patent eligible. *Gottschalk*, 409 U.S. at 67 (quoting *Funk Bros. Seed Co. v. Kalo Inoculant Co.*, 333 U.S. 127, 130 (1948)).

To assess patent eligibility, the Supreme Court in *Alice* articulated a two-part test. First, courts must "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 573 U.S. at 218. If so, then courts must determine whether any of the claims "transform that abstract idea into a patent-eligible invention." *Id.* at 221.

As part of *Alice*'s first step, courts must consider, "in light of [its] specification," whether the patent claims "as a whole" are directed to an abstract idea or other patent-ineligible concepts. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016). Critically, they must "articulate what the claims are directed to with enough specificity to ensure the step one inquiry is meaningful." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018) (quoting *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017)). Neither the Supreme Court nor the Federal Circuit has defined what constitutes an abstract idea. Instead, they "have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish*, 822 F.3d at 1334; *see also Alice*, 573 U.S. at 221 ("[W]e need not labor to delimit the precise contours of the 'abstract ideas' category . . . ."). Since *Alice*, courts have found numerous "abstract ideas" in patent claims, including, as relevant here, "delivering user-selected media content to portable devices," *Affinity Labs of Tex., LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1269 (Fed. Cir. 2016), and "remotely controlling the . . . storing, delivering, and deleting of media content on a mobile device," *ClearDoc, Inc. v. RiversideFM, Inc.*, No. 21-CV-1422, 2022 WL 606698, at *5 (D. Del. Feb. 22, 2022); *accord Sensormatic Electronics, LLC v. Wyze Labs, Inc.*, No. 2020-2320, 2021 WL 2944838 (Fed. Cir. July 14, 2021) (unpublished) (same as to wireless communication and remote surveillance).

5

Moreover, courts have identified multiple inquiries relevant to *Alice* step one. If, for example, the patent claims an abstract "result or effect" while invoking "generic processes and machinery," then the claims are directed to an abstract idea. *Free Stream Media*, 996 F.3d at 1363 (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). Indeed, patent claims must "go beyond stating a functional result [and] identify how that functional result is achieved by limiting the claim scope to . . . concrete action." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020) (internal quotation marks omitted). Particularly in the context of computer-based patents, courts must determine "whether the 'focus of the claims' is on a 'specific asserted improvement in capabilities, or instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool.'" *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1286 (Fed. Cir. 2018) (quoting *Enfish*, 822 F.3d at 1336) (cleaned up). Put differently, "[a]n abstract idea does not become nonabstract by limiting the invention to a particular field of use or technological environment, such as the Internet." *Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1366 (Fed. Cir. 2015).

If the main thrust of the claims is a patent-ineligible concept, then courts must proceed to *Alice* step two and consider whether the claims, "both individually and 'as an ordered combination,'" offer an "'inventive concept.'" *Alice*, 573 U.S. at 217 (quoting *Mayo*, 566 U.S. at 72, 79). The purpose of the inquiry is to determine whether the claims "amount[] to significantly more than a patent upon the ineligible concept itself." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 218) (cleaned up). Most importantly, if the only possible "inventive concept is the application of an abstract idea using conventional and well-understood techniques," then the patent will fail at *Alice* step two. *BSG*

*Tech. LLC*, 899 F.3d at 1290 (internal quotation marks omitted). It follows that implementing an abstract idea on a computer, without more, does not make otherwise ineligible claims patentable. *See Alice*, 573 U.S. at 222 ("[C]omputer implementation did not supply the necessary inventive concept.") (citing *Benson*, 409 U.S. at 67)); *Intellectual Ventures*, 792 F.3d at 1367 ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [does not] provide a sufficient inventive concept."). By contrast, claim limitations that direct "the non-conventional and non-generic arrangement of known, conventional pieces" comprise an inventive concept. *BASCOM Glob. Internet Svcs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1318-19 (Fed. Cir. 2019) (noting that patent claims using conventional technology in novel ways comprise an inventive concept). Any inventive concept "must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co., Ltd.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).

Patent eligibility is a question of law that can involve "underlying questions of fact." *Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1358-59 (Fed. Cir. 2020). Thus, patent eligibility may be resolved on a Rule 12(b)(6) motion "where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *accord Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018). Patents are "presumed valid," and the party challenging the patent's validity — here, Block — has the burden of establishing invalidity by clear and convincing evidence. 35 U.S.C. § 282(a); *see Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011).

# DISCUSSION

Construing the factual allegations in the First Amended Complaint in the light most favorable to EscapeX, the Court concludes that Block has met its burden of proving unpatentability. Taken together, and considered with the specification, the patent claims are directed to the abstract idea of remotely updating content on a user device. None of the patent claims, either separately or as an ordered combination, adds an inventive concept to this abstract idea. Accordingly, the claims are not eligible for patent protection.

## A. Applying *Alice* Step One

The Court begins with step one of the *Alice* inquiry. The '113 Patent claims a method for an artist or other provider to update content on an album stored on a user device, without the user's intervention. Patent 2:34-35; 6:61-62; Def.'s Mem. 5 & n.3. In its own description of the claims, EscapeX alleges that the patent claims are directed to providing artists control over dynamic albums even while those albums are in the hands of a user. Pl.'s Opp'n 4, 7, 8; ECF No. 28 ("Pl.'s Supp. Brief"), at 3.[1] Claims 1, 14, and 27 then detail this process. Thus, the patent claims are directed to the idea of remotely updating content on a user device.

Block argues that the Federal Circuit's decision in *Affinity Labs*, which held that a patent delivering "streaming content" from a network-based system to a wireless device is directed to the abstract idea of "delivering user-selected media content to portable devices," 838 F.3d at

---

[1] EscapeX argues that the patent represents an advancement over the prior art because artists can maintain control over the albums stored on user devices even if the devices have no network connection. Pl.'s Opp'n 9. But this advancement is claimed only in the specification. Patent 6:63-66. In assessing whether the patent is directed to an abstract idea, the language of the specification "must always yield to the claim language." *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019). Because the claims do not describe a process for providing album updates without a network connection, the Court will not consider that advancement in assessing the patent under *Alice* step one.

1268-29, is dispositive here. The patent claims in *Affinity Labs* are certainly similar to the '113 Patent claims. Both describe a method for delivering media content from a control device to a user device. 838 F.3d at 1268; Patent 6:61-62, 7:1-3, 7:40-42. But the methods are not identical. Importantly, the method in *Affinity Labs* focused on providing "user-selected" content to user devices, while the method here allows artists to provide content to user devices, without user intervention. *Compare id.* at 1269 *with* Patent 38:23-29. Thus, the '113 Patent goes a step beyond the *Affinity Labs* patent — by giving an artist control over the media content provided to a user device, rather than keeping that control with the user. Patent 7:9-21.

That said, this additional feature does not save the '113 Patent at *Alice* step one. The patent claims a process for allowing a system to communicate with, and update content stored on, another device. The Federal Circuit has repeatedly held that "claims reciting the collection, transfer, and publishing of data are directed to an abstract idea." *Cellspin Soft, Inc.*, 927 F.3d at 1315 (holding that a patent claiming a method for capturing data on one device, and then transferring that data to a second device through a Bluetooth connection, was directed to an abstract idea); *accord In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 610-13 (Fed. Cir. 2016) (holding that claims teaching a method for classifying image data and sending data to a server, which then stores the data, were directed to an abstract idea). By the same token, "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019); *accord ChargePoint*, 920 F.3d at 773 (noting that "communication over a network" for the purpose of "interacting with a device" is an abstract idea).

Applying these principles, district courts have found claims substantially similar to those in the '113 Patent to be abstract. For example, the court in *ClearDoc* determined that a patent

9

claiming a method for "remotely controlling the recording, storing, delivering, and deleting of media content on a mobile device" was directed to abstract ideas — namely, storing and updating content on a separate mobile device and the idea of remote control. 2022 WL 606698, at *4-5; *see also BlackBerry Ltd. v. Facebook, Inc.*, 487 F. Supp. 3d 870, 881 (C.D. Cal. 2019) (holding that a patent claiming a method for "organizing information and choosing some of that information to send to a person based on . . . a 'triggering event'" was directed to an abstract idea); *Google LLC v. Sonos, Inc.*, 498 F. Supp. 3d 1138, 1140-41, 51-52 (N.D. Cal. 2020) (holding that a patent claiming a process for collecting and analyzing information, then pushing notifications to specific users based on that analysis, was directed to an abstract idea). The same result is warranted here. The '113 Patent claims a method for "remotely controlling" the delivery and deletion "of media content on a mobile device." *ClearDoc*, 2022 WL 606698, at *5. In other words, it teaches the basic concept of communication between computing devices. Extrapolating from the Federal Circuit's holding in *Affinity Labs* that the delivery of user-selected media content to a mobile device is an abstract idea and from its decisions that communication between devices is also an abstract idea, the Court concludes that controlling and updating provider-selected media content stored on user devices is an abstract idea.

      Nor does the claimed method reflect a solution to a technological problem. *See* Pl.'s Opp'n 9. It is true that courts have drawn a distinction between a "specific asserted improvement in computer capabilities" and an improvement that merely invokes computers as a tool and have held that the former can be patented. *Enfish*, 822 F.3d at 1335-36, 39 (concluding that a patent directed to creating a new type of data storage was a "specific implementation of a solution" to a technological problem). Thus, the Federal Circuit concluded in *Uniloc USA, Inc. v LG Electronics USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020), that a patent directed to reducing the

10

time it took for two devices to communicate was "directed to a patent-eligible improvement in computer functionality." *Id.* at 1307.  The claims further specified how this improvement is achieved; they did not involve merely applying conventional computer technology. *Id.* at 1308-09.  Along similar lines, in *DDR Holdings, LLC v. Hotels,com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), the Circuit found that a patent claiming a method to open an advertisement embedded on a website while still remaining on the host website was patent-eligible because it solved "a problem specifically arising in the realm of computer networks." *Id.* at 1257.  Normally, a user clicking on an advertisement would be transported to a separate webpage, but the patented method overrode that response, thus improving a specific technology. *Id.* at 1257-58.

According to EscapeX, the '113 Patent teaches a method for performing remote "file manipulation" in order to give artists, or other content providers, control over downloaded content; this "file manipulation," it argues, is a specific technological improvement that renders the claims non-abstract.  Pl.'s Opp'n 9; Pl.'s Supp. Brief 4.  But this is a far cry from the processes found to be patent eligible in *Uniloc* and *DDR Holdings*.  The '113 Patent does not improve any computer function or enhance some aspect of computer hardware or software.  *See Alice*, 573 U.S. at 225; *Free Stream Media*, 996 F.3d at 1364-65.  The patent directs one computing system to send instructions to another device, which then implements those instructions. *E.g.*, Patent 38:20-28.  But transmitting data between computing devices is a generic computer function, *Cellspin Soft, Inc.*, 927 F.3d at 1315, and the patent recites no claims suggesting how it improves that function.  The patent further explains that the user device updates the songs in an album by changing the coding based on the album parameters communicated by the computer system. *E.g.*, Patent 35:38-41, 35:55-36:21.  Again, however, EscapeX does not suggest that this method involves an improvement to how media content is

coded or re-coded on a device.[2] The '113 Patent merely recites the use of generic computing devices in conventional ways. *Id.* 35:20-25, 36:39-40, 38:12-15; *see also BSG Tech LLC*, 899 F.3d at 1288 (finding that a patent failed to "recite any improvement" in database functionality where it claimed methods for using databases in only conventional ways); *Quantum Stream Inc. v. Charter Commc'ns, Inc.*, 309 F. Supp. 3d 171, 184 (S.D.N.Y. 2018) ("[A]t bottom, [the patents and claims] do not represent or describe improvements in computing systems, specific new software or hardware or technology, or some other type of computing method that improves the computer's functionality or makes it more efficient, such as an information 'structure designed to improve the way a computer stores and retrieves data in memory.'" (quoting *Enfish*, 822 F.3d at 1339)). In short, because the focus of the '113 Patent is the abstract idea of remotely updating stored content, it is ineligible at *Alice* step one.

The fact that the '113 Patent claims *results* rather than a specific method reaffirms the conclusion that it is directed to an abstract idea. *See, e.g., Free Stream Media*, 996 F.3d at 1363; *Am. Axle & Mfg.*, 967 F.3d at 1302. In *Free Stream Media*, for example, the Federal Circuit found that the patent at issue attempted to claim a process for allowing devices such as cell phones and televisions to communicate by "overcoming a mobile device's security [mechanism]," but the claims failed to explain how they would do so. 996 F.3d at 1363-64. So too, in *Affinity Labs*, the Federal Circuit concluded that the patent claimed a desired outcome — namely streaming requested content to a user device — "without providing any limiting detail

---

[2] Nor is the '113 Patent *directed to* an improved method for encoding song data on a user device. Determining what a patent is "directed to" involves looking to the focus of the specification, in part "to understand the problem facing the inventor." *ChargePoint*, 920 F.3d at 767. EscapeX explicitly defines the problem facing the inventor as the lack of control artists have over their content, leading to their inability to effectively monetize their content, to update it, and to integrate it with social media. Patent 1:30-2:15. The Court follows the patent's specification in determining the focus of the patent.

that confine[d] the claim to a particular solution." 838 F.3d at 1269. "The purely functional nature of the claim," the court reasoned, was proof that it was "directed to an abstract idea, not to a concrete embodiment of that idea." *Id.*; *accord Guvera IP Pty Ltd. v. Spotify, Inc.*, No. 21-CV-4544 (JMF), 2022 WL 4537999, at *5 (S.D.N.Y. Sept. 28, 2022) (finding that the patent claims described outcomes, including tagging media content with "identifiers" and comparing different identifiers, without explaining how to achieve those outcomes).

As in *Free Stream Media* and *Affinity Labs*, the claims here do not detail with sufficient specificity the process, as distinct from results. Claim 27 explains that an artist gives a command to a computer system, which then generates "album parameters" based on that command. Patent 38:16-22. The claim does not explain how those album parameters are generated. *See* ECF No. 27 ("Def.'s Supp. Brief"), at 3. It goes on to explain that the computer system provides these album parameters to the user device, and, in response, the user device updates the dynamic album. Patent 38:23-38. The claim does not explain how the computer system communicates the album parameters, or how the user device enacts these parameters. Claims 1 and 14, which EscapeX does not discuss in its opposition papers, provide more detail than Claim 27, but they still fail to explain the specific method for achieving the claimed results. The claims describe how the user device updates the songs in a dynamic album but do not explain the patent's purported key innovation — how an artist can remotely control that process. *See id.* 35:28-47, 36:39-60. In fact, the patent does not explain at all how the artist-controlled device communicates with the user-controlled device; it merely assumes that this communication can and will happen. *Id.* 35:28-30, 36:43-45, 38:23-25 (noting, for example, that the process involves "providing, by the computer system, the one or more album parameters to at least the user device remote from the computer system"); *see, e.g.*, *Two-Way Media Ltd. v. Comcast*

13

*Cable Commc'ns, LLC*, 874 F.3d 1329, 1337-38 (Fed. Cir. 2017) (holding that a claimed method for sending information between devices and monitoring the information was abstract because it failed to describe how to achieve those steps). Lacking such specification, the claims sweep too broadly; they monopolize the result of remote control over content stored on a user device rather than claiming one way of achieving that result. *See, e.g.*, *Personalized Media Commc'ns, LLC v. Amazon.Com, Inc.*, 161 F. Supp. 3d 325, 331-32 (D. Del. 2015) (finding that a method for remotely reprogramming a device's operating instructions was not patent eligible because it claimed a "generic" method, thus preempting all methods for remote updating). This is fatal to the patent's eligibility.

**B. Applying *Alice* Step Two**

In light of the Court's conclusion that the '113 Patent is directed to an abstract idea, it is necessary to proceed to step two of the *Alice* inquiry, which asks whether the claims contain an "inventive concept." *Alice*, 573 U.S. at 217. EscapeX argues that the '113 Patent's inventive concept is "providing artist control of a dynamic album on a user's device." Pl.'s Opp'n 10; Pl.'s Supp. Brief 5. This constitutes an inventive concept, according to EscapeX, because it was previously impossible for artists to retain such control. *Id.* But that does not add "significantly more" to the abstract idea of communication between computing devices. *ChargePoint*, 920 F.3d at 773 (internal quotation marks omitted). Even if EscapeX is correct that artists lacked the ability to control user-downloaded albums, "there is nothing inventive in the claims that permits" communications between two computer systems "that were previously not possible." *Free Stream Media Corp.*, 996 F.3d at 1366. Notably, the '113 Patent recites only "routine steps," *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 911 (Fed. Cir. 2017), which do not go significantly beyond instructions for implementing the abstract idea of remotely updating

14

content on a user device using conventional computer systems, *see BASCOM*, 827 F.3d at 1349. The "inventive concept" EscapeX claims is nothing more than "a mere instruction to implement an abstract idea on a computer." *Alice*, 573 U.S. at 223 (cleaned up).

Indeed, in *ChargePoint*, the Federal Circuit rejected a similar argument that using network-based communication to turn on or off electric vehicle charging stations added an inventive concept. *See* 920 F.3d at 774. As the court explained, because network control is an abstract idea, the patent's use of that abstract idea to purportedly solve a problem, without improving the functionality of the charging stations, did not render the claims eligible for patent protection. *See id.* at 774-75. Similarly, in *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253 (Fed. Cir. 2016), the Federal Circuit concluded that a patent directed to the "out-of-region delivery of regional broadcasting" to cell phones lacked an inventive concept because the claims recited "the use of generic features of cellular telephones, . . . as well as routine functions, such as transmitting and receiving signals, to implement the underlying idea." *Id.* at 1262. The court rejected the plaintiff's argument that the patent taught the use of a novel "downloadable application" because the patent's claimed advance was not the process for downloading the application, but rather was merely the content of the application. *Id.* at 1263. Therefore, the patent did not claim any technological improvement sufficient to transform the abstract idea into an inventive concept. *Id.*

EscapeX's arguments fail for the same reasons. The '113 Patent requires "a user device with one or more physical processors" that are "programmed with computer program instructions," and "a computer system having one or more physical processors" that are similarly "programmed with computer program instructions." Patent 35:23-25, 36:39-40, 38:12-14. The patent's repeated claims that the processors must be "programmed with computer program

15

instructions" reveals the generic, conventional nature of the claims — the patent teaches no specialized or improved method of programming. *See Alice*, 573 U.S. at 225 (noting that the method claims fail to "effect an improvement in any other technology or technical field"). It next requires an artist to input commands, directing changes to an album; the computer system then provides these changes — "album parameters" — to user devices. *Id.* 35:28-30, 36:43-45, 38:16-29. In response to these album parameters, the user device changes the coding for the dynamic album, to add content, replace content, delete content, or reshuffle content. *Id.* 35:35-43, 35:55-36:21, 36:49-60, 37:1-35. The patent thus describes basic computer functions — changing computer code in response to programmed instructions. The remaining dependent claims merely explain that the album is playable only through an artist-specific application, *id.* 36:22-24, 37:36-38, and that the album is subject to a "music lease" that can expire, rendering the music unplayable, *id.* 36:25-30, 37:39-38:3. EscapeX does not argue that either of these claims offers an inventive concept; nor could it, as they describe conventional computer functions. *See, e.g.*, Def.'s Mem. 17. The claims, separately and as an ordered combination, thus add no inventive concept. Indeed, as EscapeX implicitly acknowledges, *see* Pl.'s Opp'n 10, Pl.'s Supp. Brief 5, "the only possible inventive concept in the . . . asserted claims is the abstract idea itself," *ChargePoint*, 920 F.3d at 775, namely providing a computer system with remote control over content on user devices.

Contrary to EscapeX's assertions, the '113 Patent does not "provide a solution to a specific problem arising in e-commerce." Pl.'s Opp'n 10. EscapeX does not, for example, allege that prior to the '113 Patent, a computer system was unable to communicate with, and transmit information to, a user device. *See Messaging Gateway Sols., LLC v. Amdocs, Inc.*, No. 14-CV-732, 2015 WL 174434, at *5 (D. Del. Apr. 15, 2015) (finding an inventive concept where

16

the patent claimed a process for allowing communication between devices that ordinarily cannot communicate). Nor does the '113 Patent eliminate a technological problem, such as the need for bulky, complex, and expensive hardware. *See Cellspin Soft*, 927 F.3d at 1316-17. Finally, the '113 Patent does not establish a "specific network structure" that improves the distribution of content between devices. *See Cooperative Ent., Inc. v. Kollective Tech., Inc.*, 50 F.4th 127, 131-32 (Fed. Cir. 2022); *see also BASCOM*, 827 F.3d at 1350 (identifying an inventive concept in the "non-conventional and non-generic arrangement" of a content filtering tool at a specific location in a network). At best, EscapeX argues that the control the patent purports to provide artists over their music was not possible previously. Pl.'s Opp'n 10; *see also* Patent 2:5-9. But, as described above, this "control" is an abstract idea — communication between computing devices. And even if this instantiation of the abstract idea was novel in 2014 (the priority date of the '113 Patent) — a doubtful proposition[3] — "a claim for a *new* abstract idea is still an abstract idea." *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021) (cleaned up); *see also, e.g.*, *In re Morsa*, 809 F. App'x 913, 918-19 (Fed. Cir. 2020) (per curiam) (noting that "[n]ovelty of an invention" alone cannot "avoid the problem of abstractness" (quoting *DIRECTV LLC*, 838 F.3d at 1263)). In short, there is no inventive concept in the '113 patent claims.

---

[3] Among other things, in *Personalized Media Commc'ns, LLC v. Netflix Inc.*, 475 F. Supp. 3d 289 (S.D.N.Y. 2020), the court determined that a patent granted in 1981 contained the inventive concept of remote reprogramming television and radio systems. *Id.* at 300-01. The court specifically found that this was an inventive concept because "remote reprogramming was not well-understood, routine, and conventional at the time of the patent." *Id.* at 301. In other words, more than thirty years before the '113 Patent, the patent at issue in *Netflix* claimed the inventive concept of remote reprogramming, analogous to the supposedly inventive concept here. Moreover, the patent claims in *Netflix* provided a specific process for achieving the remote reprogramming — in stark contrast to the claims in the '113 Patent. *Compare id.* at 300 (providing details about how the reprogramming instructions were communicated from one device to another), *with* Patent 38:8-29 (stating merely that the computer system "provid[es] . . . the one or more album parameters to . . . the user device").

## CONCLUSION

For the foregoing reasons, the '113 Patent's claims are directed to an abstract idea and thus not eligible for patent protection. Accordingly, Block's motion to dismiss must be and is GRANTED, and the First Amended Complaint is DISMISSED.

Although leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend," *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019). Here, the problem with EscapeX's claims is substantive, so amendment would be futile. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (citing cases); *Ghaly Devices*, 443 F. Supp. 3d at 434 (denying leave to replead where patent claims were found ineligible). Moreover, EscapeX does not seek leave to amend or suggest that it is in possession of facts that would cure the problems with its claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014) ("A plaintiff need not be given leave to amend if [it] fails to specify how amendment would cure the pleading deficiencies in [its] complaint."); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). Finally, the Court granted EscapeX leave to amend in response to Block's first motion to dismiss and explicitly warned that it would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 31; s*ee, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013) ("Plaintiff's failure to fix deficiencies in its previous pleadings is alone sufficient ground to deny leave to amend *sua sponte*." (citing cases)). Accordingly, the Court declines to *sua sponte* grant EscapeX leave to amend. *See Guvera IP Pty Ltd.*, 2022 WL 4537999, at *8 (denying leave to amend in nearly identical circumstances).

The Clerk of Court is directed to terminate ECF No. 19, to enter judgment in favor of Block, and to close this case.

SO ORDERED.

Dated: January 24, 2023
       New York, New York

                                                   JESSE M. FURMAN
                                            United States District Judge