**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| |
|---|
| EscapeX IP LLC |
| Plaintiff, |
| v. |
| Block, Inc. |
| Defendant. |

Civil Action No. 1:22-cv-03575-JMF

**ORAL ARGUMENT REQUESTED**

**BLOCK'S MOTION FOR EXCEPTIONAL CASE FINDING AND**
**AWARD OF ATTORNEYS' FEES AND EXPENSES PURSUANT TO 35 U.S.C. § 285**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 2

      A.     Plaintiff EscapeX IP LLC, its parent DynaIP, DynaIP's web of patent-
asserting shell companies, and their increasingly litigious counsel...................... 2

      B.     DynaIP's litigation campaign against Block............................................. 4

            1.     *AuthWallet v. Block*.................................................................... 4

            2.     *EscapeX v. Block*........................................................................ 6

            3.     *AML v. Block*.............................................................................. 8

LEGAL STANDARD................................................................................................ 11

ARGUMENT ........................................................................................................... 12

I.     This case is exceptional under *Octane Fitness*. ........................................... 12

      A.     The '113 patent is indisputably ineligible under binding precedent..................... 12

      B.     This case is part of a pattern of abusive litigation by DynaIP entities and
their counsel. ........................................................................................ 17

II.    The Court should award Block the full amount of attorneys' fees it has
incurred in this litigation. ....................................................................... 20

CONCLUSION.......................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
  838 F.3d 1266 (Fed. Cir. 2016)........................................................................ *passim*

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)........................................................................ *passim*

*AML IP, LLC v. Academy, Ltd.*,
  No. 6:21-cv-00789 (W.D. Tex. filed July 30, 2021)..............................................10

*AML IP, LLC v. Ace Hardware Corp.*,
  No. 6:22-cv-01089 (W.D. Tex. filed Oct. 20, 2022) ..............................................9

*AML IP, LLC v. Adorn Boutique, LLC*,
  No. 6:21-cv-00599 (W.D. Tex. filed Jun. 11, 2021)..............................................10

*AML IP, LLC v. AffiniPay, LLC*,
  No. 6:20-cv-01198 (W.D. Tex. filed Dec. 30, 2020)..............................................10

*AML IP, LLC v. Airbnb, Inc.*,
  No. 6:22-cv-01262 (W.D. Tex. filed Dec. 7, 2022)..............................................9

*AML IP, LLC v. ALDI, Inc.*,
  No. 6:21-cv-00605 (W.D. Tex. filed Jun. 11, 2021)..............................................10

*AML IP, LLC v. Am. Eagle Outfitters, Inc.*,
  No. 6:21-cv-00823 (W.D. Tex. filed Aug. 9, 2021) ..............................................10

*AML IP, LLC v. Amazon.com Servs., LLC*,
  No. 6:23-cv-00023 (W.D. Tex. filed Jan. 13, 2023)..............................................9

*AML IP, LLC v. Ashley Furniture Indus., LLC*,
  No. 6:22-cv-00175 (W.D. Tex. filed Feb. 18, 2022) ..............................................10

*AML IP, LLC v. Atwood Distributing, L.P.*,
  No. 4:22-cv-00215 (E.D. Tex. filed Mar. 18, 2022)..............................................10

*AML IP, LLC v. Bath & Body Works, LLC*,
  No. 4:22-cv-00216 (E.D. Tex. filed Mar. 18, 2022)..............................................10

*AML IP, LLC v. Beauty Brands, Inc.*,
  No. 4:22-cv-00222 (E.D. Tex. filed Mar. 21, 2022)..............................................10

*AML IP, LLC v. Bed Bath & Beyond, Inc.*,
  No. 6:21-cv-00600 (W.D. Tex. filed Jun. 11, 2021)..............................................10

*AML IP, LLC v. Belk, Inc.*,
No. 6:21-cv-00822 (W.D. Tex. filed Aug. 9, 2021) ................................................10

*AML IP, LLC v. Best Buy Co.*,
No. 6:23-cv-00024 (W.D. Tex. filed Jan. 13, 2023) ..................................................9

*AML IP, LLC v. Big Lots Stores, Inc.*,
No. 4:22-cv-00223 (E.D. Tex. filed Mar. 21, 2022) ...............................................10

*AML IP, LLC v. Blizzard Ent't, Inc.*,
No. 6:21-cv-00184 (W.D. Tex. filed Feb. 26, 2021) ...............................................10

*AML IP, LLC v. Block, Inc.*,
No. 6:22-cv-01263-ADA-DTG (W.D. Tex. filed Dec. 7, 2022) ...............................9

*AML IP, LLC v. Bloomingdales.com, LLC*,
No. 3:23-cv-00102 (N.D. Tex. filed Jan. 13, 2023)...................................................9

*AML IP, LLC v. Boot Barn Holdings, Inc.*,
No. 6:22-cv-00177 (W.D. Tex. filed Feb. 18, 2022) ...............................................10

*AML IP, LLC v. BPS Direct, LLC*,
No. 6:22-cv-01090 (W.D. Tex. filed Oct. 20, 2022) .................................................9

*AML IP, LLC v. The Buckle, Inc.*,
No. 4:22-cv-00225 (E.D. Tex. filed Mar. 21, 2022) ...............................................10

*AML IP, LLC v. Catnip Games, LLC*,
No. 6:21-cv-00821 (W.D. Tex. filed Aug. 9, 2021) ................................................10

*AML IP, LLC v. The Cato Corp.*,
No. 6:22-cv-00178 (W.D. Tex. filed Feb. 18, 2022) ...............................................10

*AML IP, LLC v. Coinbase Global, Inc.*,
No. 1:21-cv-00174 (D. Del. filed Feb. 9, 2021) ......................................................10

*AML IP, LLC v. The Container Store, Inc.*,
No. 6:23-cv-00025 (W.D. Tex. filed Jan. 13, 2023)...................................................9

*AML IP, LLC v. Costco Wholesale Corp.*,
No. 6:23-cv-00026 (W.D. Tex. filed Jan. 13, 2023)...................................................9

*AML IP, LLC v. E.C. Barton & Co.*,
No. 6:21-cv-00524 (W.D. Tex. filed May. 24, 2021)..............................................10

*AML IP, LLC v. Fossil Grp., Inc.*,
No. 6:23-cv-00029 (W.D. Tex. filed Jan. 18, 2023)...................................................9

*AML IP, LLC v. Guitar Center Stores, Inc.*,
  No. 6:23-cv-00030 (W.D. Tex. filed Jan. 18, 2023)................................................9

*AML IP, LLC v. Hallmark Cards, Inc.*,
  No. 4:22-cv-00214 (E.D. Tex. filed Mar. 18, 2022)..............................................10

*AML IP, LLC v. Home Depot USA, Inc.*,
  No. 6:23-cv-00031 (W.D. Tex. filed Jan. 18, 2023)................................................9

*AML IP, LLC v. Interior Define, Inc.*,
  No. 6:23-cv-00032 (W.D. Tex. filed Jan. 18, 2023)................................................9

*AML IP, LLC v. J.C. Penney Corp.*,
  No. 6:21-cv-00522 (W.D. Tex. filed May 24, 2021)..............................................10

*AML IP, LLC v. Kohl's Inc.*,
  No. 6:21-cv-00419 (W.D. Tex. filed Apr. 27, 2021).............................................10

*AML IP, LLC v. Kongregate, Inc.*,
  No. 1:21-cv-00266 (D. Del. filed Feb. 23, 2021) ..................................................10

*AML IP, LLC v. Marshalls Inc.*,
  No. 6:21-cv-00525 (W.D. Tex. filed May 24, 2021)..............................................10

*AML IP, LLC v. Payment Approved, LLC*,
  No. 6:20-cv-01197 (W.D. Tex. filed Dec. 30, 2020)..............................................10

*AML IP, LLC v. Rebilly, Inc.*,
  No. 6:20-cv-01199 (W.D. Tex. filed Dec. 30, 2020)..............................................10

*AML IP, LLC v. Signet Group Servs. US Inc.*,
  No. 6:21-cv-01021 (W.D. Tex. filed Oct. 1, 2021) ...............................................10

*AML IP, LLC v. Small Luxury Hotels of the World Mgmt., Inc.*,
  No. 6:22-cv-01091 (W.D. Tex. filed Oct. 20, 2022) ..............................................9

*AML IP, LLC v. Stripe, Inc.*,
  No. 6:22-cv-01257 (W.D. Tex. filed Dec. 5, 2022)................................................9

*AML IP, LLC v. Transform SR Holding Mgmt., LLC*,
  No. 6:23-cv-00033 (W.D. Tex. filed Jan. 18, 2023)................................................9

*AML IP, LLC v. Ubisoft, Inc.*,
  No. 5:21-cv-00294 (E.D.N.C. filed July 14, 2021).................................................10

*AML IP, LLC v. Zale Corp.*,
  No. 4:22-cv-00226 (E.D. Tex. filed Mar. 21, 2022)..............................................10

*AuthWallet, LLC v. American Express Co.*,
    No. 1:21-cv-03219 (S.D.N.Y. June 4, 2021), Dkt. 11 ............................................................4

*AuthWallet, LLC v. Block, Inc.*,
    602 F. Supp. 3d 620 (S.D.N.Y. 2022) ..................................................................................5, 6

*AuthWallet, LLC v. Block, Inc.*,
    No. 1:21-cv-05463-LJL (S.D.N.Y.) ...........................................................................1, 4, 6, 7

*AuthWallet, LLC v. Citigroup, Inc..*,
    No. 4:21-cv-01203 (S.D. Tex. Aug. 10, 2021), Dkt. 10 ......................................................4

*AuthWallet, LLC v. Hotels.com, LP*,
    No. 3:22-cv-01778 (N.D. Tex. Oct. 5, 2022), Dkt. 16 ........................................................4

*AuthWallet, LLC v. Omni Hotels Mgmt. Corp.*,
    No. 3:22-cv-01776 (N.D. Tex. Dec. 15, 2022), Dkt. 20 ......................................................4

*AuthWallet, LLC v. Small Luxury Hotels of the World Mgmt., Inc.*,
    No. 4:22-cv-02749 (S.D. Tex. Jan. 25, 2023), Dkt. 21 .......................................................4

*AuthWallet, LLC v. Visa, Inc.*,
    No. 3:20-cv-04121 (N.D. Cal. Aug, 7, 2020), Dkt. 26 ........................................................4

*Bilksi v. Kappos*,
    561 U.S. 593 (2010) ............................................................................................................4

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
    986 F.3d 1367 (Fed. Cir. 2021) ..........................................................................................10

*eDekka LLC v. 3balls.com, Inc.*,
    2015 WL 9225038 (E.D. Tex. Dec. 17, 2015) .........................................................12, 15, 18

*Eon-Net LP v. Flagstar Bancorp*,
    653 F.3d 1314 (Fed. Cir. 2011) .................................................................................2, 18, 19

*EscapeX IP LLC v. Apple, Inc.*,
    No. 6:22-cv-00427 (W.D. Tex. Oct. 26, 2022), Dkt. 24 ......................................................6

*EscapeX IP LLC v. Digital Trends*,
    No. 1:22-cv-03512 (S.D.N.Y. filed Apr. 29, 2022) ......................................................6, 7, 8

*EscapeX IP LLC v. Google LLC*,
    No. 4:22-cv-08711 (N.D. Cal. filed Dec. 13, 2022) ...........................................................6

*EscapeX IP LLC v. Rockbot Inc.*,
    No. 2:22-cv-00130 (E.D. Tex. Oct. 12, 2022), Dkt. 16 .......................................................6

*EscapeX IP LLC v. Sirius XM Int'l Inc.*,
  No. 6:22-cv-00430 (W.D. Tex.)............................................................6

*EscapeX IP LLC v. Spotify USA Inc.*,
  No. 3:22-cv-00963 (N.D. Tex.) ...........................................................6

*Finnavations LLC v. Payoneer, Inc.*,
  2019 WL 1236358 (D. Del. Mar. 18, 2019) ............................12, 15, 16

*Free Stream Media Corp. v. Alphonso, Inc.*,
  996 F.3d 1355 (Fed. Cir. 2021)..........................................................8

*Genetic Veterinary Scis., Inc. v. LABOklin GmbH & Co. KG*,
  2020 WL 863975 (E.D. Va. Feb. 20, 2020)............................................5

*Guvera IP Pty Ltd v. Spotify, Inc.*,
  2022 WL 4537999 (S.D.N.Y. Sept. 28, 2022)............................8, 13, 16

*Innovation Sciences, LLC v. Amazon.com, Inc.*,
  842 F. App'x 555 (Fed. Cir. 2021) .....................................................15

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
  876 F.3d 1372 (Fed. Cir. 2017).............................................11, 12, 15, 16

*Inventor Holdings v. Bed Bath & Beyond Inc.*,
  2016 WL 3090633 (D. Del. May 31, 2016)..........................................11

*Mathis v. Spears*,
  857 F.2d 749 (Fed. Cir. 1988)............................................................20

*Missed Call, LLC v. Freshworks, Inc.*,
  No. 22-cv-739-CFC (D. Del. filed June 6, 2022) ..................................3

*Missed Call, LLC v. Talkdesk, Inc.*,
  No. 22-cv-740-CFC (D. Del. filed June 6, 2022) ..................................3

*Missed Call, LLC v. Twilio Inc.*,
  No. 22-cv-742-CFC (D. Del. filed June 6, 2022) ..................................3

*My Health, Inc. v. ALR Techs., Inc.*,
  2017 WL 6512221 (E.D. Tex. Dec. 19, 2017)..........................15, 18, 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014)..............................................................11, 12, 13

*P.S. Prods., Inc. v. Panther Trading Co.*,
  No. 4:22-cv-00473 (E.D. Ark. Filed May 23, 2022) ............................17

*Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*,
   2022 WL 194482 (D. Colo. Jan. 20, 2022)..............................................................16

*Romag Fasteners, Inc. v. Fossil, Inc.*,
   866 F.3d 1330 (Fed. Cir. 2017).............................................................................17

*Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*,
   494 F. Supp. 3d 263 (D. Del. 2020)......................................................................19

*Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*,
   2018 WL 3599359 (D. Del. July 27, 2018) ............................................................5

*Safe IP LLC v. Copyleaks, Inc.*,
   No. 22-cv-918-CFC (D. Del. filed July 11, 2022)...................................................3

*Safe IP LLC v. Grammarly, Inc.*,
   No. 22-cv-919-CFC (D. Del. filed July 11, 2022)...................................................3

*Safe IP LLC v. Proctorio, Inc.*,
   No. 22-cv-920-CFC (D. Del. filed July 11, 2022)...................................................3

*Shipping & Transit, LLC v. 1A Auto, Inc.*,
   283 F. Supp. 3d 1290 (S.D. Fla. 2017) .............................................................17, 20

*Shipping & Transit, LLC v. Hall Enters., Inc.*,
   2017 WL 3485782 (C.D. Cal. July 5, 2017)......................................................15, 19

*Wentworth Grp. Inc. v. Evanston Ins. Co.*,
   2022 WL 336456 (S.D.N.Y. Feb. 4, 2022)..............................................................5

*Williams v. Regus Mgmt. Grp., LLC*,
   2012 WL 1890384 (S.D.N.Y. May 15, 2012) (Furman, J.).......................................5

*WPEM, LLC v. SOTI Inc.*,
   2020 WL 555545 (E.D. Tex. Feb. 4, 2020) ...........................................................17

*ZT IP, LLC v. VMWare, Inc.*,
   2023 WL 1785769 (N.D. Tex. Feb. 6, 2023) ....................................................16, 17

**Statutes and Regulations**

35 U.S.C.

   § 101....................................................................................................... *passim*

   § 285....................................................................................................... *passim*

Federal Rules of Evidence

408.................................................................................................................5

408(a)............................................................................................................5

408(b)............................................................................................................5

Federal Rules of Civil Procedure

7.1.................................................................................................................2

54(d)(2)(B)(iii)..............................................................................................21

**INTRODUCTION**

This case is but one installment in a barrage of meritless patent-infringement suits brought by entities associated with Dynamic IP Deals LLC, which calls itself "DynaIP." DynaIP finds low-quality patents, creates shell companies to own and assert those patents, and then—in the name of those shell companies—indiscriminately sues entire industries for infringement with the sole aim of forcing nuisance-value settlements.

Block has, regrettably, found itself a repeated target of DynaIP, and thus files this motion for an exceptional case finding and an award of attorneys' fees. In 2021, DynaIP entity AuthWallet, LLC sued Block in this district, asserting infringement of a patent that was objectively invalid under 35 U.S.C. § 101. Block successfully moved to dismiss on that ground. Mere hours after the *AuthWallet* case was dismissed, DynaIP entity EscapeX IP LLC filed this suit, asserting a patent that—as this Court has now concluded—is likewise invalid under § 101. But DynaIP has not stopped there. While this case was pending, a third DynaIP entity—AML IP, LLC—sued Block on another objectively weak patent, this time in the Western District of Texas. And there may be no end in sight. Judging by the nearly 300 cases DynaIP entities have filed over the past 30 months, DynaIP has an unlimited number of weak patents in its arsenal and has (or will create) an unlimited number of shell companies to assert them.

The § 101 issue here was not close. The '113 patent asserted in this case is highly similar to patents that the Federal Circuit has repeatedly held ineligible, as Block explained in its motion to dismiss and EscapeX did not even bother to dispute in its opposition. The weakness of the asserted patent is by itself a sufficient basis for an exceptional case finding and an award of attorneys' fees. When combined with this suit's place in an extortionate litigation campaign by the DynaIP entities and their counsel, the case for fees is clear. Courts have not hesitated to award fees in lawsuits that—like this one—are part of a pattern of abusive litigation designed to

1

obtain "quick settlement[s] at a price far lower than the cost to defend the litigation." *Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1326–27 (Fed. Cir. 2011).

## BACKGROUND

**A.    Plaintiff EscapeX IP LLC, its parent DynaIP, DynaIP's web of patent-asserting shell companies, and their increasingly litigious counsel**

EscapeX is a shell company created to assert patents—specifically, to assert the patent at issue here, U.S. Patent No. 9,009,113. EscapeX has not filed a corporate disclosure statement (in violation of Federal Rule of Civil Procedure 7.1), but public information shows that EscapeX is effectively a subsidiary of DynaIP, which purports to specialize in "intellectual property monetization."[1] EscapeX is managed by an entity called Pueblo Nuevo LLC,[2] which in turn is managed by DynaIP.[3] DynaIP, through Pueblo Nuevo, manages over thirty other companies besides EscapeX, all of which likewise appear to be shell companies created to assert patents.[4]

As shown in the chart attached as Exhibit 4, DynaIP entities—represented virtually every time by the same counsel representing EscapeX here—have filed 274 patent-infringement lawsuits over approximately the past thirty months. It appears that DynaIP (or the person(s) or entity(ies) behind DynaIP) creates a new entity each time it wishes to assert a new family of patents.[5] The DynaIP cases have been filed all over the country, but the vast majority are in the

---

[1] See Unified Patents, $3,000 for Dynamic IP Deals entity EscapeX IP prior art (May 25, 2022), https://www.unifiedpatents.com/insights/2022/5/25/3000-for-dynamic-ip-deals-entity-escapex-ip-prior-art (last visited January 30, 2023); Dynamic IP Deals LLC, https://dynaipdeals.com/ (last visited January 30, 2023).

[2] *See* Ex. 1 (Westlaw Company Investigator Report for EscapeX IP LLC).

[3] *See* Ex. 2 (Westlaw Company Investigator Report for Pueblo Nuevo LLC).

[4] The "Associate Analytics Chart" found at Exhibit 1 lists multiple companies with which EscapeX shares a relationship by virtue of a "shared business name." The "shared business name" is Pueblo Nuevo LLC, which manages EscapeX and those related entities. *See* Ex. 3.

[5] The relationship among the nominally separate DynaIP entities has not gone unnoticed by the federal courts. Two DynaIP entities—Missed Call, LLC and Safe IP LLC—are currently

Eastern and Western Districts of Texas—both favorite venues of patent-assertion entities.[6] Of the 274 DynaIP cases, none have made it to trial, and 177 (about two-thirds) have seen early settlements or dismissals.[7] Very early, in fact: most have not made it beyond the pleadings.

EscapeX's counsel is a self-proclaimed prolific filer of patent-infringement cases. According to publicly available statistics, counsel filed over 150 patent cases in 2021, over 325 in 2022, and over 25 in January 2023 (which puts him on pace for another 325 filings in 2023).[8] His webpage notes that his "goal" for 2022 was "to be in the top ten law firms filing new patent cases across the United States."[9] Counsel shattered that goal, coming in at number one on the list most prolific filers of patent-infringement complaints.[10] No one else was even close; EscapeX's counsel filed nearly one hundred more cases than the second-place firm. In fact, last year, counsel was responsible for nearly *one-tenth of all patent cases filed in the country*.[11]

---

embroiled in a dispute in the U.S. District Court for the District of Delaware over their failures to comply with Chief Judge Connolly's standing orders concerning corporate and litigation-funding disclosure statements. *See Missed Call, LLC v. Freshworks, Inc.*, No. 22-cv-739-CFC (D. Del. filed June 6, 2022); *Missed Call, LLC v. Talkdesk, Inc.*, No. 22-cv-740-CFC (D. Del. filed June 6, 2022); *Missed Call, LLC v. Twilio Inc.*, No. 22-cv-742-CFC (D. Del. filed June 6, 2022); *Safe IP LLC v. Copyleaks, Inc.*, No. 22-cv-918-CFC (D. Del. filed July 11, 2022); *Safe IP LLC v. Grammarly, Inc.*, No. 22-cv-919-CFC (D. Del. filed July 11, 2022); *Safe IP LLC v. Proctorio, Inc.*, No. 22-cv-920-CFC (D. Del. filed July 11, 2022). Judge Connolly's concerns regarding those failures—and regarding the conduct of the DynaIP entities' counsel—are outlined in a November 2022 memorandum, which is attached to this motion as Ex. 5.

[6] *See* Ex 6 (Lex Machina report on federal court patent cases); RPX, Q1 in Review at 5 (April 2022), *available at* https://www.law360.com/articles/1484236/attachments/0.

[7] *See* Ex. 4.

[8] *See* Ex. 7 (Lex Machina report for William Peterson Ramey III).

[9] Ex. 8.

[10] *See* Ex. 9 (Lex Machina Law Firms Report).

[11] *See* Ex. 6 (329 of 3,821 patent cases filed in 2022 were filed by EscapeX's counsel).

**B.    DynaIP's litigation campaign against Block**

This lawsuit is the second in a trio of cases filed against Block by three DynaIP entities: AuthWallet, LLC; EscapeX IP LLC (the plaintiff here); and AML IP, LLC.

### 1.    *AuthWallet v. Block*

DynaIP unleashed its first salvo against Block on June 22, 2021, when DynaIP entity AuthWallet, LLC sued Block in this district for infringement of U.S. Patent No. 9,292,852. *See AuthWallet, LLC v. Block, Inc.*, No. 1:21-cv-05463-LJL (S.D.N.Y.).[12] To call the *AuthWallet* complaint "bare-bones" would be a compliment; it is all of nine pages long, most of which consists of nearly unintelligible claim charts.[13]

The claims of the '852 patent, which was prosecuted before the development of modern patent-eligibility jurisprudence, recite a basic and conventional business practice—processing a discounted payment in a sales transaction—using generic computer technology. Such claims are invalid under hornbook § 101 law. *See, e.g.*, *Bilksi v. Kappos*, 561 U.S. 593, 611 (2010) (holding that a computer-implemented method of "hedging, or protecting against risk" was invalid under § 101 because the concept of hedging is "a fundamental economic practice long prevalent in our system of commerce"); *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219, 223 (2014) (holding computerized systems and methods that implemented "the concept of intermediated

---

[12] In addition to its suit against Block, AuthWallet filed six other cases asserting the '852 patent. Five of the six were voluntarily dismissed prior to the answer deadline. *See* Notice of Dismissal, *AuthWallet, LLC v. Omni Hotels Mgmt. Corp.*, No. 3:22-cv-01776 (N.D. Tex. Dec. 15, 2022), Dkt. 20; Notice of Dismissal, *AuthWallet, LLC v. Hotels.com, LP*, No. 3:22-cv-01778 (N.D. Tex. Oct. 5, 2022), Dkt. 16; Notice of Dismissal, *AuthWallet, LLC v. Citigroup, Inc..*, No. 4:21-cv-01203 (S.D. Tex. Aug. 10, 2021), Dkt. 10; Notice of Dismissal, *AuthWallet, LLC v. Am. Express Co.*, No. 1:21-cv-03219 (S.D.N.Y. June 4, 2021), Dkt. 11; Notice of Dismissal, *AuthWallet, LLC v. Visa, Inc.*, No. 3:20-cv-04121 (N.D. Cal. Aug, 7, 2020), Dkt. 26. The sixth case is currently stayed pending settlement discussions. *See* Order, *AuthWallet, LLC v. Small Luxury Hotels of the World Mgmt., Inc.*, No. 4:22-cv-02749 (S.D. Tex. Jan. 25, 2023), Dkt. 21.

[13] *See* Ex. 10 (*AuthWallet* Complaint).

settlement, *i.e.*, the use of a third party to mitigate settlement risk" invalid under § 101 because intermediated settlement is a fundamental economic practice). Counsel for Block advised AuthWallet's counsel as much and asked AuthWallet to dismiss the suit. AuthWallet's counsel refused and instead proposed that the parties settle the case for $139,000.[14]

Block promptly moved to dismiss on the ground that the patent was invalid for failure to claim patentable subject matter under 35 U.S.C. § 101. Judge Liman agreed, holding that the patent was directed to the "abstract idea and well-established business practice of processing payments during a sales transaction where a benefit, such as a discounted payment, is given to the purchaser for use in future transactions." *AuthWallet, LLC v. Block, Inc.*, 602 F. Supp. 3d 620, 631 (S.D.N.Y. 2022). As the Court observed, "[f]or years, retailers have provided coupons and other financial incentives to customers during purchase. The [patent] simply describes that that conventional business practice may be effected by technology rather than by hand." *Id.* The Court further found that the patent failed to provide any inventive concept transforming the "abstract idea of processing discounts on payment transactions into a patent-eligible application." *Id.* at 634. Thus, it held the patent invalid and dismissed the case. *Id.* at 636.

---

[14] The Court may properly consider evidence of the parties' settlement negotiations in deciding this motion. *See Genetic Veterinary Scis., Inc. v. LABOklin GmbH & Co. KG*, 2020 WL 863975, at *2 n.1 (E.D. Va. Feb. 20, 2020); *Rothschild Mobile Imaging Innovations, LLC v. Mitek Sys., Inc.*, 2018 WL 3599359, at *4 n.3 (D. Del. July 27, 2018) (collecting cases). Federal Rule of Evidence 408 provides no bar; that rule prohibits evidence related to settlements *only* when offered "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). And it expressly permits such evidence's admission "for another purpose." Fed. R. Evid. 408(b); *see, e.g.*, *Wentworth Grp. Inc. v. Evanston Ins. Co.*, 2022 WL 336456, at *5 n.11 (S.D.N.Y. Feb. 4, 2022); *Williams v. Regus Mgmt. Grp., LLC*, 2012 WL 1890384, at *2 (S.D.N.Y. May 15, 2012) (Furman, J.). Here, the "other purpose" is to show that DynaIP is in the business of offering nuisance-value settlements.

### 2. *EscapeX v. Block*

DynaIP, however, was undeterred. Within literally *hours* of Judge Liman's decision dismissing the *AuthWallet* complaint, DynaIP entity EscapeX filed the present case. Here, EscapeX asserted infringement of U.S. Patent No. 9,009,113, which covers updating media content on a user device using generic computer technology.[15] The operative complaint contains a comparable level of detail to the *AuthWallet* complaint (which is to say, virtually none). Dkt. 9.

The '113 patent, like the '852 patent asserted in *AuthWallet*, is textbook patent-ineligible. Indeed, Block showed—and this Court ultimately held—that the '113 claims closely track those held invalid on § 101 grounds in *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266 (Fed. Cir. 2016). As it did in *AuthWallet*, counsel for Block contacted plaintiff's counsel, notified them of the *Affinity Labs* case, and asked that EscapeX dismiss this lawsuit. As they did in *AuthWallet*, counsel for EscapeX refused.

So—as it did in *AuthWallet*—Block moved to dismiss on the ground that the '113 patent is invalid for failure to claim patentable subject matter under 35 U.S.C. § 101. Dkt. 20. This

---

[15] EscapeX filed several cases asserting the '113 patent against other music-streaming providers, including Apple, Rockbot, Spotify, Google, and Sirius XM. EscapeX voluntarily dismissed its cases against Apple and Rockbot. *See* Order, *EscapeX IP LLC v. Apple, Inc.*, No. 6:22-cv-00427 (W.D. Tex. Oct. 26, 2022), Dkt. 24; Plaintiff's Notice of Voluntary Dismissal, *EscapeX IP LLC v. Rockbot Inc.*, No. 2:22-cv-00130 (E.D. Tex. Oct. 12, 2022), Dkt. 16. The cases against Spotify, Google, and Sirius XM remain pending. *EscapeX IP LLC v. Spotify USA Inc.*, No. 3:22-cv-00963 (N.D. Tex.); *EscapeX IP LLC v. Google LLC*, No. 4:22-cv-08711 (N.D. Cal. filed Dec. 13, 2022) (transferred from W.D. Tex.); *EscapeX IP LLC v. Sirius XM Int'l Inc.*, No. 6:22-cv-00430 (W.D. Tex.). Notably, in the case against Google, EscapeX failed to respond to Google's motion to transfer venue, and the court thus treated the motion as unopposed and granted it. Order, *Google*, No. 4:22-cv-08711, Dkt. 22 (W.D. Tex. Dec. 11, 2022). The court found it "troublesome" that "the same counsel representing this same plaintiff ha[d] already been chastised by th[e] Court for his repeated failure to file in a timely manner." *Id.* at 2.

EscapeX also sued the tech website Digital Trends for infringement of the '113 patent. *See EscapeX IP LLC v. Digital Trends*, No. 1:22-cv-03512 (S.D.N.Y. filed Apr. 29, 2022). As discussed below, EscapeX voluntarily dismissed that case after Digital Trends filed a motion to dismiss on § 101 grounds.

Court then afforded EscapeX the opportunity to amend its complaint to address the issues Block raised in its motion to dismiss. Dkt. 22. EscapeX declined to amend and instead simply filed an opposition. Dkt. 23. Less than a week after briefing concluded, this Court referred the case to mediation, stating that "the parties should participate in mediation . . . prior to a decision on the motion—mindful of the time it will take the Court to decide the motion and the time and expense involved in any litigation that would . . . follow the Court's decision." Dkt. 25.

Meanwhile, in a parallel case that EscapeX filed against Digital Trends asserting the '113 patent, Digital Trends filed a motion to dismiss that was, in relevant part, identical to Block's motion. *Compare* Dkt. 20 at 9–18, *with* Digital Trends' Memorandum of Law at 12–22, *Digital Trends*, No. 1:22-cv-03512 (S.D.N.Y. Aug. 11, 2022), Dkt. 18. On September 8, 2022 (one day after this Court referred this case to mediation), Judge McMahon observed that EscapeX's response to Digital Trends' motion to dismiss was two weeks past due. *See* Order at 1, *Digital Trends*, No. 1:22-cv-03512 (S.D.N.Y. Sept. 8, 2022), Dkt. 19. Noting that Digital Trends' motion "raise[d] serious *Alice* issues," Judge McMahon stated that she wished to consider and rule on the motion promptly, since her ruling might impact "cases relating to the same patent, but against different defendants, that are pending before other judges of the court" (a clear reference to EscapeX's case against Block). *Id.* In response, EscapeX voluntarily dismissed its case against Digital Trends without filing an opposition to the motion to dismiss. *See* Notice of Voluntary Dismissal, *Digital Trends*, No. 1:22-cv-03512 (S.D.N.Y. Sept. 19, 2022), Dkt. 21.

EscapeX did not, however, dismiss its case against Block. And so, under this Court's referral, the parties scheduled a December 15, 2022 mediation. Prior to the mediation, EscapeX offered to settle the case for $34,000.[16] Block rejected that offer in view of the extraordinary

---

[16] *See* Ex. 11 (10/31/22 e-mail from W. Ramey to D. Block et al.).

weakness of the '113 patent. The parties proceeded to mediation but failed to reach a settlement.

Shortly thereafter, this Court ordered supplemental briefing on Block's motion to dismiss focusing on this Court's decision in *Guvera IP Pty Ltd v. Spotify, Inc.*, which held that a patent directed to similar subject matter as EscapeX's '113 patent was invalid under 35 U.S.C. § 101. 2022 WL 4537999 (S.D.N.Y. Sept. 28, 2022). The parties submitted their supplemental briefs on January 6, 2023. Dkts. 27, 28.

On January 24, 2023, this Court issued its Opinion and Order holding that the '113 patent is invalid under 35 U.S.C. § 101 for failure to claim patentable subject matter. Dkt. 30. Specifically, the Court held that the claims of the '113 patent "are directed to the abstract idea of remotely updating content on a user device." *Id.* at 8. And, because none of the claims adds an inventive concept to that abstract idea, the '113 patent is not eligible for patent protection. *Id.* at 14–17. The Court explicitly noted the claims' similarity to those held invalid in prior Federal Circuit cases, including *Affinity Labs* and *Free Stream Media Corp. v. Alphonso, Inc.*, 996 F.3d 1355 (Fed. Cir. 2021). *See* Dkt. 30 at 9, 11, 14. Recognizing that any amendment to the complaint would be futile given the substantive issues with EscapeX's claims, the Court dismissed this case with prejudice. *Id.* at 18. On January 25, 2023, in accordance with the Court's Opinion and Order, the clerk entered judgment. Dkt. 31.

### 3.     *AML v. Block*

About a week before the December mediation in this case, and one day before mediation statements were due, a *third* DynaIP entity—AML IP, LLC—sued Block via another slapdash complaint. *See AML IP, LLC v. Block, Inc.*, No. 6:22-cv-01263-ADA-DTG (W.D. Tex. filed Dec. 7, 2022); Ex. 12 (*AML* Complaint). Apparently having had enough of the Southern District of New York, AML sued in the U.S. District Court for the Western District of Texas (despite the fact that Block has no regular and established place of business in that district and, indeed, no

meaningful connection to the district at all). AML asserts U.S. Patent No. 6,876,979, which is directed to a method of "electronic commerce" that uses a third-party intermediary "to facilitate interactions between service providers." *AML v. Block* is one of dozens filed by AML asserting the '979 patent against a broad swath of consumer products retailers and other companies.[17]

---

[17] *See AML IP, LLC v. Fossil Grp., Inc.*, No. 6:23-cv-00029 (W.D. Tex. filed Jan. 18, 2023); *AML IP, LLC v. Guitar Center Stores, Inc.*, No. 6:23-cv-00030 (W.D. Tex. filed Jan. 18, 2023); *AML IP, LLC v. Home Depot USA, Inc.*, No. 6:23-cv-00031 (W.D. Tex. filed Jan. 18, 2023); *AML IP, LLC v. Interior Define, Inc.*, No. 6:23-cv-00032 (W.D. Tex. filed Jan. 18, 2023); *AML IP, LLC v. Transform SR Holding Mgmt., LLC*, No. 6:23-cv-00033 (W.D. Tex. filed Jan. 18, 2023); *AML IP, LLC v. Bloomingdales.com, LLC*, No. 3:23-cv-00102 (N.D. Tex. filed Jan. 13, 2023); *AML IP, LLC v. Amazon.com Servs., LLC*, No. 6:23-cv-00023 (W.D. Tex. filed Jan. 13, 2023); *AML IP, LLC v. Best Buy Co.*, No. 6:23-cv-00024 (W.D. Tex. filed Jan. 13, 2023); *AML IP, LLC v. The Container Store, Inc.*, No. 6:23-cv-00025 (W.D. Tex. filed Jan. 13, 2023); *AML IP, LLC v. Costco Wholesale Corp.*, No. 6:23-cv-00026 (W.D. Tex. filed Jan. 13, 2023); *AML IP, LLC v. Airbnb, Inc.*, No. 6:22-cv-01262 (W.D. Tex. filed Dec. 7, 2022); *AML IP, LLC v. Stripe, Inc.*, No. 6:22-cv-01257 (W.D. Tex. filed Dec. 5, 2022); *AML IP, LLC v. Ace Hardware Corp.*, No. 6:22-cv-01089 (W.D. Tex. filed Oct. 20, 2022); *AML IP, LLC v. BPS Direct, LLC*, No. 6:22-cv-01090 (W.D. Tex. filed Oct. 20, 2022); *AML IP, LLC v. Small Luxury Hotels of the World Mgmt., Inc.*, No. 6:22-cv-01091 (W.D. Tex. filed Oct. 20, 2022); *AML IP, LLC v. Beauty Brands, Inc.*, No. 4:22-cv-00222 (E.D. Tex. filed Mar. 21, 2022); *AML IP, LLC v. Big Lots Stores, Inc.*, No. 4:22-cv-00223 (E.D. Tex. filed Mar. 21, 2022); *AML IP, LLC v. The Buckle, Inc.*, No. 4:22-cv-00225 (E.D. Tex. filed Mar. 21, 2022); *AML IP, LLC v. Zale Corp.*, No. 4:22-cv-00226 (E.D. Tex. filed Mar. 21, 2022); *AML IP, LLC v. Hallmark Cards, Inc.*, No. 4:22-cv-00214 (E.D. Tex. filed Mar. 18, 2022); *AML IP, LLC v. Atwood Distributing, L.P.*, No. 4:22-cv-00215 (E.D. Tex. filed Mar. 18, 2022); *AML IP, LLC v. Bath & Body Works, LLC*, No. 4:22-cv-00216 (E.D. Tex. filed Mar. 18, 2022); *AML IP, LLC v. Ashley Furniture Indus., LLC*, No. 6:22-cv-00175 (W.D. Tex. filed Feb. 18, 2022); *AML IP, LLC v. Boot Barn Holdings, Inc.*, No. 6:22-cv-00177 (W.D. Tex. filed Feb. 18, 2022); *AML IP, LLC v. The Cato Corp.*, No. 6:22-cv-00178 (W.D. Tex. filed Feb. 18, 2022); *AML IP, LLC v. Signet Group Servs. US Inc.*, No. 6:21-cv-01021 (W.D. Tex. filed Oct. 1, 2021); *AML IP, LLC v. Catnip Games, LLC*, No. 6:21-cv-00821 (W.D. Tex. filed Aug. 9, 2021); *AML IP, LLC v. Belk, Inc.*, No. 6:21-cv-00822 (W.D. Tex. filed Aug. 9, 2021); *AML IP, LLC v. Am. Eagle Outfitters, Inc.*, No. 6:21-cv-00823 (W.D. Tex. filed Aug. 9, 2021); *AML IP, LLC v. Academy, Ltd.*, No. 6:21-cv-00789 (W.D. Tex. filed July 30, 2021); *AML IP, LLC v. Ubisoft, Inc.*, No. 5:21-cv-00294 (E.D.N.C. filed July 14, 2021); *AML IP, LLC v. Adorn Boutique, LLC*, No. 6:21-cv-00599 (W.D. Tex. filed Jun. 11, 2021); *AML IP, LLC v. Bed Bath & Beyond, Inc.*, No. 6:21-cv-00600 (W.D. Tex. filed Jun. 11, 2021); *AML IP, LLC v. ALDI, Inc.*, No. 6:21-cv-00605 (W.D. Tex. filed Jun. 11, 2021); *AML IP, LLC v. J.C. Penney Corp.*, No. 6:21-cv-00522 (W.D. Tex. filed May. 24, 2021); *AML IP, LLC v. E.C. Barton & Co.*, No. 6:21-cv-00524 (W.D. Tex. filed May. 24, 2021); *AML IP, LLC v. Marshalls Inc.*, No. 6:21-cv-00525 (W.D. Tex. filed May. 24, 2021); *AML IP, LLC v. Kohl's Inc.*, No. 6:21-cv-00419 (W.D. Tex. filed Apr. 27, 2021); *AML IP, LLC v. Blizzard Ent't, Inc.*, No. 6:21-cv-00184 (W.D.

The '979 patent is quite possibly the *weakest* of the three DynaIP has thus far asserted against Block (and that is saying something). Indeed, the claims in the '979 patent are very similar to those at issue in *Alice* itself, which held that claims directed to using a third-party intermediary to mitigate risk in settlement of transactions were unpatentable under § 101. 573 U.S. at 219, 223. They are also very similar to those at issue in *cxLoyalty, Inc. v. Maritz Holdings Inc.*, which held that a patent directed to "facilitating, or brokering, a commercial transaction . . . between a purchaser using a first form of value . . . and a seller transacting in a second form of value" were unpatentable under § 101. 986 F.3d 1367, 1376–77 (Fed. Cir. 2021). And they are similar to those at issue in *Inventor Holdings v. Bed Bath & Beyond Inc.*, which covered "using a third-party intermediary to create a remote pay system" via "generic computer implementation." 2016 WL 3090633, at *2–3 (D. Del. May 31, 2016). The *Inventor Holdings* court not only found the claims invalid; it also awarded attorneys' fees, explaining that no reasonable litigant could have believed the claims eligible under *Alice*. The Federal Circuit affirmed, concluding that those claims—which, again, are very similar to those in AML's '979 patent—were "manifestly directed to an abstract idea." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017).

Block has yet again pointed out the weakness of the case to AML's counsel, and they have yet again refused to dismiss their meritless lawsuit. Block's response to the *AML* complaint is due on February 17. Block intends to raise the patent's ineligibility in due course, if and when the case arrives to a venue where Block is properly subject to suit.

---

Tex. filed Feb. 26, 2021); *AML IP, LLC v. Kongregate, Inc.*, No. 1:21-cv-00266 (D. Del. filed Feb. 23, 2021); *AML IP, LLC v. Coinbase Global, Inc.*, No. 1:21-cv-00174 (D. Del. filed Feb. 9, 2021); *AML IP, LLC v. Payment Approved, LLC*, No. 6:20-cv-01197 (W.D. Tex. filed Dec. 30, 2020); *AML IP, LLC v. AffiniPay, LLC*, No. 6:20-cv-01198 (W.D. Tex. filed Dec. 30, 2020); *AML IP, LLC v. Rebilly, Inc.*, No. 6:20-cv-01199 (W.D. Tex. filed Dec. 30, 2020).

## LEGAL STANDARD

Under 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The standard of proof is a preponderance of the evidence. *Id.* at 557–58.

In deciding whether a case is "exceptional," courts consider the "totality of the circumstances," including factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554 & n.6. "[A] case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* at 555. Importantly, sanctionable conduct is not the standard for awarding attorneys' fees under § 285. *Id.* Rather, fees are appropriate in cases where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Id.*

The fact that issued patents are presumed valid does not "relieve patentholders from independently evaluating the strength of their patents prior to suing." *Finnavations LLC v. Payoneer, Inc.*, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019). Patent issuance is not "a license to sue with abandon." *Id.* Accordingly, notwithstanding the presumption of validity, courts do not hesitate to grant § 285 motions in cases where the patentee's arguments for validity are exceptionally weak. *See generally Inventor Holdings*, 876 F.3d 1372.

**ARGUMENT**

This case is exceptional for two reasons. *First*, the '113 patent claims are objectively

ineligible under *Alice* and its progeny. *Second*, this case is part of a "pattern of litigation abuses"

by the DynaIP entities and their counsel "characterized by the repeated filing of patent

infringement actions for the sole purpose of forcing settlements, with no intention of testing the

merits of one's claims." *eDekka LLC v. 3balls.com, Inc.*, 2015 WL 9225038, at *4 (E.D. Tex.

Dec. 17, 2015) (quoting *SFA Sys., LLC v. Newegg, Inc.*, 793 F.3d 1344, 1349 (Fed. Cir. 2015)).

Each of these circumstances would be independently sufficient to support an exceptional-case

finding. Taken together, they compel one.

**I.      This case is exceptional under *Octane Fitness*.**

**A.      The '113 patent is indisputably ineligible under binding precedent.**

The § 101 issue in this case was not close. The '113 patent claims implement the abstract

idea of updating provider-selected media content on a user device using generic and well-known

computer components. As this Court observed, the '113 patent claims are "similar" to those at

issue in the Federal Circuit's *Affinity Labs* decision, as "[b]oth describe a method for delivering

media content from a control device to a user device." Dkt. 30 at 9. And, while the '113 patent

adds a step not present in the *Affinity Labs* claim—"giving an artist control over the media

content provided to a user device"—that "additional feature does not save the '113 [p]atent"

because, as the "Federal Circuit has repeatedly held," "claims reciting the collection, transfer,

and publishing of data are directed to an abstract idea." *Id.* (collecting cases).

This Court also observed that the claimed method (i) does not "reflect a solution to a

technological problem," *id.* at 10; (ii) recites "*results* rather than a specific method," *id.* at 12;

and (iii) lacks an inventive concept because it amounts to an "instruction to implement an

abstract idea on a computer," *id.* at 15. As this Court correctly explained, claims with these sorts

12

of features have repeatedly been held ineligible by the Supreme Court, the Federal Circuit, and district courts. Indeed, this Court's decision in *Guvera*—to which the Court explicitly drew the parties' attention—made precisely these points, noting that claims that cover results rather than specific means of achieving those results and that fail to reflect any improvement to computer functionality are fatally abstract. 2022 WL 4537999, at *5–6.

Perhaps the best evidence of the extreme weakness of the patent is found in EscapeX's opposition to Block's motion to dismiss. EscapeX did not even bother to cite—much less attempt to distinguish—*Affinity Labs* or any of the many other cases Block cited finding claims directed to delivery of media content ineligible for patenting. That is a telling indication that EscapeX had no answer to that binding precedent. Instead, EscapeX made four arguments, every one of which was foreclosed by governing law.

*First*, EscapeX argued that the claims are eligible because they allow "an artist to have control over a dynamic album even though the dynamic album may be in the hands of a user via the user's device." Dkt. 23 at 1, 4, 7. But, as Block explained and this Court found, that concept is itself the abstract idea and so cannot impart eligibility under black-letter law. *E.g.*, Dkt. 30 at 15 (citing *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019)).

*Second*, EscapeX asserted that the concept of allowing artist control over a dynamic album did not exist in the prior art. Dkt. 23 at 3–4, 9–10. That is legally irrelevant: as Block explained and this Court found, "a claim for a *new* abstract idea is still an abstract idea," and it is still ineligible for patenting. Dkt. 30 at 17 (quoting *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1318 (Fed. Cir. 2021)).

*Third*, EscapeX contended that the patent specification describes a technological advance that allows the artist to "maintain control over the dynamic album, even without a network

13

connection." Dkt. 23 at 8–9. That, too, is irrelevant. As Block explained and this Court found, this purported advance is irrelevant because it is described "only in the specification." Dkt. 30 at 8 n.1 (citing *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 766 (Fed. Cir. 2019) (specification "must always yield to the claim language")).

*Fourth*, EscapeX argued that the claims are eligible because they are directed "to a specific problem arising in e-commerce." Dkt. 23 at 9–10. Wrong again. As Block explained and this Court found, generic computer implementation of an abstract idea is categorically insufficient to impart eligibility. Dkt. 30 at 15–16. *Alice* itself held as much. 573 U.S. at 223–24.

In short, the '113 patent is ineligible for patenting under well-settled law, and EscapeX's arguments in support of validity were weak and inconsistent with binding precedent. An exceptional case finding is appropriate under these circumstances.

Judge Gilstrap's decision in *eDekka* is instructive. There, the patentee filed a bevy of cases asserting a patent that was "clearly directed toward unpatentable subject matter" and "demonstrably weak on its face." 2015 WL 9225038, at *2–3. And, "rather than acknowledging the inherent weaknesses of the [] [p]atent," the plaintiff "proffered completely untenable arguments to the Court throughout the § 101 briefing process" and at oral argument. *Id.* at *3. That the plaintiff "repeatedly offered insupportable arguments on behalf of an obviously weak patent," Judge Gilstrap found, "support[ed] an 'exceptional' case finding." *Id.* at *4.

This case is of a piece. The '113 patent, particularly given its substantial similarity with the patent at issue in *Affinity Labs*, is "demonstrably weak on its face," and EscapeX's arguments in support of its validity were legally and factually insupportable. An exceptional case finding is warranted. *See Innovation Sciences, LLC v. Amazon.com, Inc.*, 842 F. App'x 555, 557 (Fed. Cir. 2021) (affirming grant of § 285 motion and award of attorneys' fees based on the "weakness of

[the plaintiff's] § 101 arguments"); *Inventor Holdings*, 876 F.3d at 1377–79 (affirming grant of § 285 motion and award of attorneys' fees where asserted patent was plainly ineligible under *Alice*); *Finnavations*, 2019 WL 1236358, at *2 (granting § 285 motion and awarding attorneys' fees where patent was "plainly directed at a patent ineligible concept"); *My Health, Inc. v. ALR Techs., Inc.*, 2017 WL 6512221, at *4 (E.D. Tex. Dec. 19, 2017) (granting § 285 motion and awarding attorneys' fees where there was "no credible argument" that claims were eligible after *Alice*); *Shipping & Transit, LLC v. Hall Enters., Inc.*, 2017 WL 3485782, at *7 (C.D. Cal. July 5, 2017) (granting § 285 motion and awarding attorneys' fees where patentee's "§ 101 position was objectively unreasonable in light of the Supreme Court's *Alice* decision and the cases that applied that decision to invalidate comparable claims").

This is a *particularly* exceptional case given EscapeX's decision to plow forward in the face of numerous warning signs regarding its patent. Block shared *Affinity Labs* with EscapeX's counsel shortly after this suit was filed; EscapeX declined to drop it. The Court gave EscapeX an opportunity to dismiss the case or amend its complaint after seeing Block's motion; EscapeX did neither. Judge McMahon provided EscapeX with a three-alarm warning concerning the validity of its patent when she observed the "serious *Alice* issues" with the '113 patent; EscapeX dismissed *that* case immediately, but did not dismiss this one.[18] This Court made the writing on the wall yet more pellucid when it requested supplemental briefing on its *Guvera v. Spotify* opinion; EscapeX responded with a typo-riddled submission that regurgitated its unpersuasive opposition brief and did not meaningfully distinguish *Guvera*. *See* Dkt. 28.

In short, EscapeX knew—or should have known—that its patent wouldn't escape from

---

[18] A sequence of events that strongly suggests that EscapeX knew its patent was in jeopardy with Judge McMahon and dismissed the case to avoid an adverse decision.

this litigation intact. Yet it pressed forward anyway. That is exactly the sort of conduct that warrants an exceptional case finding. Indeed, just days ago, a district court awarded attorneys' fees in a case where a plaintiff represented by the same counsel who represents EscapeX here insisted on maintaining a baseless patent suit despite "ample opportunities to recognize the frivolousness of its position." *ZT IP, LLC v. VMWare, Inc.*, 2023 WL 1785769, at *3 (N.D. Tex. Feb. 6, 2023); *see also Realtime Adaptive Streaming LLC v. Sling TV L.L.C.*, 2022 WL 194482, at *4 (D. Colo. Jan. 20, 2022) (granting defendant's § 285 motion and awarding attorneys' fees where plaintiff "carr[ied] on despite numerous danger signals or red flags" as to the patent's validity). Awarding attorneys' fees in such cases is proper "to deter similarly weak arguments in the future." *Inventor Holdings*, 876 F.3d at 1378; *see Finnavations*, 2019 WL 1236358, at *2 (awarding attorneys' fees against plaintiffs asserting objectively weak patents "benefits the public generally by decreasing instances of transparently meritless patent litigation—one of the many goals of the attorneys' fees provision").

An award of fees is all the more appropriate given that EscapeX's counsel's failure to properly analyze the validity of its asserted patents here is, unfortunately, not an anomaly. The Eastern District of Texas previously awarded $179,000 in fees against EscapeX's counsel's client for filing and maintaining a lawsuit on an invalid patent. *See WPEM, LLC v. SOTI Inc.*, 2020 WL 555545, at *3–6, 8 (E.D. Tex. Feb. 4, 2020). As noted above, the Northern District of Texas recently did the same, citing *WPEM* and noting that "a previous warning about certain pre-filing failures aids the Court in finding frivolousness, motivation, and the need to advance considerations of compensation and deterrence." *ZT*, 2023 WL 1785769, at *3. "[T]hat this misconduct has already been sanctioned should be weighed . . . heavily . . . in the 35 U.S.C. § 285 analysis." *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017).

16

**B.     This case is part of a pattern of abusive litigation by DynaIP entities and their counsel.**

The facial weakness of the '113 patent is reason enough for this Court to make an exceptional case filing and grant Block its attorneys' fees. But there is much more. As recounted above, this case is one of three that DynaIP entities have brought against Block asserting patents that are invalid under clear Supreme Court and Federal Circuit law. Those three cases, in turn, are part of a broader pattern of extortionate litigation tactics by DynaIP, its web of patent-assertion entities, and their litigious counsel. An award of attorneys' fees is warranted to deter such conduct from continuing. *See Shipping & Transit, LLC v. 1A Auto, Inc.*, 283 F. Supp. 3d 1290, 1300 (S.D. Fla. 2017) (plaintiff's "nationwide pattern of pervasive litigation" is a proper consideration in determining whether a case is exceptional); Order, *P.S. Prods., Inc. v. Panther Trading Co.*, No. 4:22-cv-00473 (E.D. Ark. Jan. 30, 2023), Dkt. 29 (granting attorneys' fees and awarding sanctions based on "Plaintiffs' history of repeatedly filing meritless lawsuits").

DynaIP entities have filed hundreds of cases in just a couple of years. The high dismissal rate (of nearly 300 pending cases, about two-thirds have already been dismissed, and none has reached trial)—combined with EscapeX's settlement offer of $34,000, far less than the cost of litigation—suggests a "pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims." *eDekka*, 2015 WL 9225038, at *4 (quoting *SFA*, 793 F.3d at 1349).[19]

---

[19] Block is, of course, not privy to the settlement offers EscapeX and the other DynaIP entities have made in the hundreds of other lawsuits those entities have filed. But, based on the extremely early dismissals that have occurred in most of those cases, Block suspects that many of the offers are similar in magnitude to the nuisance value amount EscapeX proposed here. If the Court believes information concerning the settlement amounts in those cases is relevant to its exceptional-case determination, the court may order EscapeX's counsel "to produce the relevant agreements for *in camera* review." *My Health*, 2017 WL 6512221, at *3.

*eDekka* is again instructive. There, the plaintiff filed "strikingly similar lawsuits against over 200 defendants," which "reflect[ed] an aggressive strategy that avoid[ed] testing its case on the merits and instead aim[ed] for early settlements falling at or below the cost of defense." *Id.* The court found it "reasonable to conclude that eDekka acted with the goal of 'exploiting the high cost to defend complex litigation' to extract 'nuisance value settlements' from defendants." *Id.* (quoting *Eon-Net*, 653 F.3d at 1326–27).

The circumstances here suggest a similar motivation on DynaIP's part. The DynaIP entities (while nominally separate, presumably to try to avoid exceptional-case motions like this one) appear to be engaged in a coordinated strategy to extort defendants who are unable or unwilling to spend the significant sums of money required to litigate a patent case even through the pleadings stage.

Indeed, this case itself is a prime example of the strategy in action. A DynaIP entity (AuthWallet) filed a suit on a facially weak patent against Block and proposed a settlement amount—$139,000—at or around the cost of litigating a motion to dismiss. Block, convinced of the invalidity of the patent, declined to settle for that amount and moved to dismiss instead. The court granted that motion, and, *hours later*, another DynaIP entity (EscapeX) sued Block again on another facially weak patent. This time, the settlement offer was only $34,000—a clear indication that the suit was filed for the sole purpose of forcing a nuisance-value settlement. That is exceptional—and exceptionally improper—litigation conduct. *See Eon-Net*, 653 F.3d at 1326 (affirming exceptional case finding where plaintiff had a "history of filing nearly identical patent infringement complaints against a plethora of diverse defendants" and "follow[ing] each filing with a demand for a quick settlement at a price far lower than the cost to defend the litigation"); *Rothschild Digital Confirmation, LLC v. CompanyCam, Inc.*, 494 F. Supp. 3d 263, 268 (D. Del.

2020) (granting defendant's § 285 motion and awarding attorneys' fees where plaintiff asserted a patent of questionable validity "numerous times against a broad swathe of defendants" and "[a]lmost all of those cases failed to advance beyond the pleadings"); *My Health*, 2017 WL 6512221, at *5 (observing that the large "number of lawsuits filed" by the plaintiff, many of which settled before a merits determination, "support[ed] the conclusion that [the plaintiff] was filing lawsuits 'for the sole purpose of forcing settlements, with no intention of testing the merits of the claims'") (quoting *SFA*, 793 F.3d at 1350); *Shipping & Transit*, 2017 WL 3485782, at *8 (plaintiff's tactic of filing of "hundreds of patent infringement lawsuits . . . and leveraging the high cost of litigation to exact settlements for amounts less than $50,000" gave rise to "a compelling need for deterrence and to discourage exploitative litigation by patentees who have no intention of testing the merits of their claims").

It bears emphasis that an award of attorneys' fees is perhaps the *only* way to deter this sort of conduct. As shell companies that do not actually practice the patents they assert, the DynaIP entities "place[] little at risk when filing suit." *Eon-Net*, 653 F.3d at 1327. They are "generally immune to counterclaims for patent infringement, antitrust, or unfair competition because [they do] not engage in business activities that would potentially give rise to those claims," and they do "not face any business risk resulting from the loss of patent protection over a product or process." *Id.* at 1327–28. In other words, DynaIP and its counsel have no skin in the game. Unless they face some sort of consequence for their abusive litigation tactics, DynaIP can keep forming more shell companies to assert more facially weak patents—expending only the time it takes their counsel to throw together a bare-bones complaint—and Block will be faced with the choice of giving into extortion or spending on the order of $100,000 (at minimum) to make each case go away. That is not the way our patent system is supposed to work.

The available evidence "all suggest[s] that Plaintiff's conduct is a pattern and practice used to obtain financial advantage against defendants in costly patent litigation." *Shipping & Transit*, 283 F. Supp. 3d at 1302. That "*modus operandi* can no longer be ignored." *Id.* The Court should find this case exceptional.

**II.    The Court should award Block the full amount of attorneys' fees it has incurred in this litigation.**

If the Court finds a case exceptional, it "may award reasonable attorneys' fees to the prevailing party." 35 U.S.C. § 285. "Where, as here, a prevailing party 'has obtained excellent results, [its] attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.'" *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). That conclusion is all the more appropriate here given that (i) Block's counsel advised EscapeX's counsel of *Affinity Labs*—the precedent fatal to the '113 patent—immediately after suit was filed and (ii) this lawsuit is but one installment in a campaign of extortion being waged by DynaIP and its many patent-assertion shell companies. Every dollar spent by Block in defending this meritless case was a waste.

**CONCLUSION**

Block respectfully requests that the Court (i) find this case exceptional under 35 U.S.C. § 285; (ii) find that Block is entitled to an award of the full amount of its attorneys' fees; and (iii) direct Block to submit evidence of its reasonable fees and expenses.[20]

---

[20] Pursuant to Federal Rule of Civil Procedure 54(d)(2)(B)(iii), Block estimates that its reasonable fees and expenses incurred in this litigation through January 31, 2023 total approximately $150,000.

Dated: February 8, 2023

Respectfully submitted,

 /s/ *Daniel S. Block*

Daniel S. Block
Chandrika Vira
William H. Milliken
Sterne, Kessler, Goldstein & Fox, P.L.L.C.
1100 New York Avenue, N.W.
Washington, DC 20005
(202) 371-2600
dblock@sternekessler.com
cvira@sternekessler.com
wmilliken@sternekessler.com

*Counsel for Defendant Block, Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on February 8, 2023.

 /s/ *Daniel S. Block*
Daniel S. Block